DAVID EHRLICH, RESPONDENT, v. WILLIAM G. MULLIGAN AND AGNES K. MULLIGAN, APPELLANTS.

Argued October 20, 1927—Decided February 6, 1928.

For the appellants, *Seufert & Elmore.*

For the respondent, *Cohen & Klein.*

The opinion of the court was delivered by

KATZENBACH, J. On November 15th, 1914, William G. Mulligan and Agnes K. Mulligan made their joint and several promissory note for the sum of $840, payable to Edward F. McDermott and Elizabeth F. McDermott six years after the date thereof. The note was delivered to the payees, who were husband and wife. On February 1st, 1917, Edward F. McDermott died. Elizabeth F. McDermott later endorsed the note and delivered it to one David Ehrlich, who paid no consideration for the transfer of the note to him. The note was not paid on presentment when it fell due. Ehrlich after he acquired the note instituted in the Supreme Court a suit against the makers. The answer of William G. Mulligan set up payment and a discharge in voluntary bankruptcy proceedings from payment of the obligation. The answer of Agnes K. Mulligan set up payment of the note. The trial resulted in a verdict in favor of the plaintiff. The defendants below have appealed from the judgment entered upon the verdict against them.

The facts respecting the transaction between the Mulligans and McDermotts with reference to the note were intricate and involved. We are not, however, concerned with these, as no question is raised on the appeal respecting the propriety of the trial judge having submitted the case to the jury. Each defendant filed a separate appeal. The grounds of appeal are the same with the exception that the appeal of William K. Mulligan includes a point not involved in the appeal of Mrs. Mulligan. The points common to both appellants are:

1. Did Elizabeth F. McDermott have legal title to the note on which suit was brought at the time she transferred the same to David Ehrlich, the plaintiff?

2. Could the plaintiff maintain this suit for the use and benefit of Elizabeth F. McDermott?

These questions will be considered first and in the order

set forth. Taking up the first question we find that the authorities generally hold that a note payable to husband and wife jointly belongs in the event of the death of either to the survivor, and that an action brought on the note after the death of one must be instituted by the survivor. In 8 *Corp. Jur.* 341, it is stated:

"If one of two joint payees dies the papers should be transferred by the survivor."

"The right to enforce payment of a promissory note made to joint payees or endorsees does not descend to representatives, but passes on or is transferred to the survivor who has title to it." *Dan. Neg. Inst.* §§ 1182, 1183 and 1183A.

"The note being payable to husband and wife jointly, belonged to the wife as survivor." *Sanford* v. *Sanford,* 45 *N. Y.* 723.

"When one or more of several obligees, covenantees or others having a joint legal interest in the contract dies, the action must be brought in the name of the survivor, and the executor or administrator of the deceased must not be joined." *Chit. Pl. (Ed. of* 1859) 19.

In the case of *Lippincott* v. *Stokes,* 6 *N. J. Eq.* 122 (at *p.* 153), Chancellor Halsted said:

"Hannah Lippincott is surviving obligee of the securities taken to her and Hope Haines, and it is claimed that she is entitled to the possession of them. I think this is so * * *."

The defendants-appellants contend that both at common law and under section 41 of the Negotiable Instruments act the plaintiff did not have title to the note. Section 41 (3 *Comp. Stat., p.* 3740) provides as follows:

"Where an instrument is payable to the order of two or more payees or endorsees who are not partners, all must endorse, unless the one endorsing has authority to endorse for the others."

This section has no application to an instrument in which the payees have the right of survivorship. Upon this point the defendants-appellants further insist that if Elizabeth F. McDermott could receive payment of the note as the survivor of the joint payees she could not by her individual endorsement transfer the title to the note to the plaintiff. This is

a unique proposition, unthinkable and insupportable. If Elizabeth F. McDermott was entitled to sue and collect the note she could transfer that right to the plaintiff, for the note was a chose in action and expressly assignable at law under section 19 of the Practice act of 1903. 3 *Comp. Stat., p.* 4056.

The second question above set forth must also be answered in the affirmative.

"The holder of the legal title may sue, although not the full owner, if the maker is not thereby prejudiced in his defense. Especially is this so where such suit is at the request or with the consent of the owner, as well as for his benefit * * *. The holder of the legal title may sue, although he has no beneficial interest in the instrument, as where a third person is entitled to the proceeds or holds the equitable title. Defendant cannot question plaintiff's title, except on the ground of bad faith in the plaintiff or prejudice to the defendant's rights." 8 *Corp. Jur.* 822.

"It is no ground of defense that the plaintiff has no beneficial interest in the note sued on, and will be bound to account to the real owner for the proceeds of any judgment recovered on it." *National Pemberton Bank* v. *Porter,* 125 *Mass.* 333.

"When the owner of a note, for reasons satisfactory to himself, assigns it to another, thereby vesting in him the full legal title, the assignee becomes, so far as the debtor is concerned, the real party in interest. The original owner is still the person to be finally benefited by the litigation, but his legal demand is no longer against the maker of the note, but against the person to whom he has assigned it. When the obligor is sued by such assignee [no claim as innocent purchaser being involved], he can make any defense he could have made against the assignor; he is fully protected against another action, and in no way is it a matter of the slightest concern to him what arrangement between the plaintiff and the original creditor occasioned the assignment. This being true, it would be a sacrifice of substance to form to permit the defendant to defeat the action by showing a failure of consideration for the transfer, or that the plaintiff was bound

to account to his assignor for a part or all of the proceeds. We hold that the objection to the judgment urged on the ground that the plaintiff was not the real party in interest is untenable." 8 *Corp. Jur.* 823, and cases cited.

In *R. M. Owen & Co.* v. *Storms & Co. et al.,* 78 *N. J. L.* 154, Mr. Justice Trenchard, speaking for this court, said:

"We think that the plaintiff company was the holder of the note and was entitled to maintain suit upon it. This right is expressly given by statute (*Pamph. L.* 1902, *p.* 583), and was undoubted at common law in the absence of a statute. *Middleton* v. *Griffith,* 57 *N. J. L.* 442. Section 51 of our Negotiable Instrument act (*Pamph. L.* 1902, *p.* 592) provides that 'the holder of a negotiable instrument may sue thereon in his own name,' and section 191 (at *p.* 614) of the same act defines a 'holder' as 'the payee or endorsee of a bill or note who is in possession of it, or the bearer thereof.' "

The defendant-appellant William G. Mulligan advances a ground of appeal for the reversal of the judgment which solely concerns him. He set up in his answer, as previously stated, that he had through bankruptcy proceedings been discharged from his obligation upon the note sued on. To support this defense there were offered to the court alleged copies of a petition of William G. Mulligan in bankruptcy, and schedules, and a discharge in bankruptcy. Objection was made to their admission on the ground that the copies of the papers offered were not certified. This objection was sustained by the trial court. An exception to this ruling was taken. The petition and schedules were marked at the end thereof as follows: "A True Copy. George T. Cranmer, Clerk. Per B. F. Havens, Chief Deputy. Seal of the Court." The discharge was marked "A True Copy. George T. Cranmer, Clerk. Seal of the Court. Per S. R. Brettell, Deputy." It is insisted that these papers should have been received in evidence. Section 27 of the Evidence act of this state (1 *Cum. Supp. to Comp. Stat., p.* 1198) provides as follows:

"Any public record of any foreign state or territory, province, county or city, or of any court therein, or any copy thereof, which is admissible in such state, territory, province, county or city, or in any court therein, to prove the facts

therein contained, or any duly certified public record of any department of the United States government or of any federal court which is admissible in any federal court or by virtue of any federal statute to prove the facts therein contained, shall be admitted in evidence in the courts of this state, and shall be evidence of the facts therein contained, to the same extent as though the original paper or papers, of which the record thereof is a copy, had been produced and proved; provided, that whenever a copy of such record, other than a duly certified copy of any public record of any department of the United States government or of any federal court, shall be offered in evidence, the same shall not be admitted, unless the same shall have been first exemplified according to the acts of congress of the United States." *Pamph. L.* 1900, *p.* 370; *Comp. Stat., p.* 2229, as amended *Pamph. L.* 1912, *ch.* 260, *p.* 466.

This statute make a certified copy of a record of the United States District Court admissible in evidence in the courts of this state. The question presented to us is whether a "true copy" is a "certified copy." We think these terms are not interchangeable, and that a "certified copy" implies more than a "true copy," and that a "true copy" is not a "certified copy." In marking a copy under the appellation of a "true copy" and affixing the seal of the court, the name of the clerk and his deputy, if marked by a deputy, there is no certification under the seal of the court and signature of the clerk that the document so marked is on file in the office of the clerk, and is a copy of the document as the same remains of record. It is a matter of which we can take judicial notice that such a form is used by the clerk of the United States District Court when requests are made of him for certified copies of papers on file. Such a form is also used in the courts of this state.

While it is true that a practice has grown up to have copies marked "a true copy," this practice is merely for convenience and the saving of money. When it becomes necessary during the trial of a case to prove a court record the documents offered must be proved in accordance with the law. There must be established an identity of subject-matter between the

copy offered and the original on file with the clerk, and identity of the person who has the custody of the original record. This can only be done by a certificate of the clerk stating that he is the clerk, and that the paper to which he is certifying is a copy of a document as the same remains of record and on file in his office. To which certification he subscribes his name and affixes the seal of the court.

The defendant-appellant contends that the affixing of the seal to the "true copy" was sufficient, and this with the signature of the clerk made by his deputy made "certified copies" of the documents. This, it will be observed, entirely ignores the essential elements to certification to which we have referred. This position may seem highly technical, but it is essential that papers of this kind be properly authenticated. To let down the bars in this respect would probably result in more injustice and litigation than to keep up the bars by a strict construction of the statute. We have thus reached the conclusion that the trial judge was correct in ruling against the admission of the proffered documents.

The judgment is affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 15.

*For reversal*—None.