SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Investors Bank v. Javier Torres (A-55-18) (082239)**

**Argued October 23, 2019 -- Decided July 1, 2020**

**PATTERSON, J., writing for the Court.**

Defendant Javier Torres signed a promissory note (Note) secured by a residential mortgage (Mortgage). Torres defaulted on the Note. CitiMortgage, Inc., then discovered that it had lost the original Note but had retained a digital copy setting forth its terms. CitiMortgage assigned the Mortgage and its interest in the Note to plaintiff Investors Bank (Investors). In this appeal, the Court considers whether Investors can enforce the Note.

The Note, which Torres signed in 2005, memorialized his agreement that the lender was authorized to transfer the Note. Torres defaulted on the Note in 2010, and CitiMortgage filed a foreclosure action. While that action was pending, CitiMortgage discovered that it no longer possessed the original Note. Ultimately, it voluntarily dismissed its foreclosure action without prejudice.

In 2013, a CitiMortgage representative executed a Lost Note Affidavit representing that the Note was not found despite a "thorough and diligent search" and that CitiMortgage was the "the lawful owner of the note," and had not "cancelled, altered, assigned or hypothecated the note." CitiMortgage attached a digital copy of the Note to its Affidavit and represented that, after the copy was made, the Note had been "properly endorsed."

In 2014, CitiMortgage served on Torres a Notice of Default and Intention to Foreclose; it then assigned to Investors "all beneficial interest under" the Mortgage, thus conveying its right to enforce the Note and Mortgage to Investors. Investors then filed this foreclosure action. Defendants challenged Investors' right to enforce the Note, based on the loss of the original.

The trial court granted summary judgment in Investors' favor and required Investors to provide indemnification "should another party attempt to enforce the lost note." The Appellate Division affirmed, interpreting N.J.S.A. 12A:3-309 and invoking the equitable doctrine of unjust enrichment. See 457 N.J. Super. 53, 56, 59, 62 (App. Div. 2018). The Court granted certification. 236 N.J. 594 (2019).

1

**HELD:** Relying on two statutes addressing assignments, N.J.S.A. 2A:25-1 and N.J.S.A. 46:9-9, as well as common-law assignment principles, the Court holds that Investors had the right as an assignee of the Mortgage and transferee of the Note to enforce the Note. The Court construes N.J.S.A. 12A:3-309 to address the rights of CitiMortgage as the possessor of a note or other instrument at the time that the instrument is lost, but not to supplant New Jersey assignment statutes and common law in the setting of this appeal or to preclude an assignee in Investors' position from asserting its rights according to the Note's terms. Read together, those three statutes clearly authorized the assignment and entitled Investors to enforce its assigned Mortgage and transferred Note. The Court does not rely on the equitable principle of unjust enrichment invoked by the Appellate Division.

1. In N.J.S.A. 2A:25-1 and N.J.S.A. 46:9-9, which date from the nineteenth century, the Legislature expressed a strong policy favoring the assignment of an array of contractual rights. Case law underscores that rights arising by contract are generally assignable, subject to exceptions for anti-assignment contractual language, statutes prohibiting the assignment of certain categories of contractual rights, and other expressions of public policy against the assignment of specific interests. Courts applying N.J.S.A. 46:9-9 to assignments of mortgages require that an assignee seeking standing to foreclose present an authenticated assignment indicating that it was assigned the note before it filed the original complaint. (pp. 14-18)

2. When it enacted New Jersey's version of the UCC in 1995, the Legislature stated that "[u]nless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity . . . supplement its provisions." N.J.S.A. 12A:1-103(b). The Legislature adopted the Comment of the UCC drafters explaining that the UCC "was drafted against the backdrop of existing bodies of law," which "supplement" but "may not be used to supplant" the UCC's provisions. Accordingly, to the extent that N.J.S.A. 2A:25-1, N.J.S.A. 46:9-9, and common-law assignment principles are not inconsistent with the UCC's text or aims, New Jersey's statutory and case law favoring assignments apply to the transfer of rights that gave rise to this appeal. (pp. 18-19)

3. The Court reviews N.J.S.A. 12A:3-309, which prescribes the conditions under which a lost instrument may be enforced. The Comment to that section cautions courts to ensure "that the defendant will be adequately protected against a claim to the instrument by a holder that may appear at some later time." The Comment also clarifies that the section addresses the rights of a party that was entitled to enforce the negotiable instrument at the moment it disappeared, not those of a party assigned the right to enforce the instrument at a later stage. After a court interpreted the District of Columbia's version of UCC section 3-309 to allow only the person who was in possession of the instrument when it was lost to enforce that instrument, the drafters of the model UCC amended section 3-309 in 2002 to make clear that the

provision was not intended to bar a transferee from seeking to enforce a negotiable instrument merely because the transferee did not possess the instrument at the moment it was lost. The New Jersey Legislature did not alter N.J.S.A. 12A:3-309 to conform to the 2002 amendment to UCC section 3-309. (pp. 19-24)

4. Here, had CitiMortgage not assigned the Mortgage to Investors, N.J.S.A. 12A:3-309 would have entitled it to enforce the Note. And there is no suggestion -- let alone clear evidence -- that the Legislature intended the provision to displace New Jersey's statutes and common law on assignments, or to nullify assignments of mortgages that are valid and enforceable under that law. The Court declines to draw an inference that by not amending N.J.S.A. 12A:3-309 following the 2002 amendment to UCC section 3-309 the Legislature rejected the proposition that a transferee of a lost negotiable instrument may enforce the lost note if it acquired ownership from a person entitled to enforce the instrument at the time it was lost. Construing N.J.S.A. 12A:3-309 to preclude the enforcement of an assigned right to a lost note because the assignee is not the party that lost the note would not simply contravene N.J.S.A. 2A:25-1, N.J.S.A. 46:9-9, and case law on assignments; it would also generate results that are arbitrary, unworkable, and unfair. In short, N.J.S.A. 12A:3-309 does not nullify Investors' rights as the assignee of the Mortgage and transferee of the lost Note. Instead, N.J.S.A. 2A:25-1, N.J.S.A. 46:9-9, and common-law assignment principles govern Investors' rights as CitiMortgage's assignee and the transferee of the lost Note. (pp. 25-27)

5. The Court briefly addresses the challenge to the trial court's consideration of the Lost Note Affidavit. The Affidavit was signed by a CitiMortgage representative before a notary public and was properly authenticated under N.J.R.E. 901. Moreover, the Affidavit was properly considered by the trial court because it qualifies as a business record under N.J.R.E. 803(c)(6). (pp. 28-31)

6. The summary judgment record fully supports the determination that Investors had the right to enforce the Note notwithstanding the loss of the original. There is no dispute that CitiMortgage had the right to enforce the Note under N.J.S.A. 12A:3-309 when it assigned the Mortgage and transferred the Note to Investors. Under N.J.S.A. 2A:25-1, N.J.S.A. 46:9-9, and the case law applying those statutes, the assignment was valid, and by its terms Investors acquired the right to enforce the lost Note. Finally, the trial court protected Torres from the threat from liability to multiple claimants by requiring Investors to indemnify Torres if a third party were to attempt to enforce the lost Note. (pp. 31-32)

**The judgment of the Appellate Division is AFFIRMED AS MODIFIED.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON's opinion.**

3

SUPREME COURT OF NEW JERSEY
A-55 September Term 2018
082239

Investors Bank,

Plaintiff-Respondent,

v.

Javier Torres,

Defendant-Appellant,

and

Mrs. Javier Torres, his wife,
and Dora M. Dillman,

Defendants.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
457 N.J. Super. 53 (App. Div. 2018).

| Argued | Decided |
| --- | --- |
| October 23, 2019 | July 1, 2020 |

Adam Deutsch argued the cause for appellant (Northeast
Law Group, attorneys; Adam Deutsch, on the briefs).

Joshua N. Howley argued the cause for respondent (Sills
Cummis & Gross, attorneys; Joshua N. Howley, of
counsel and on the briefs, and Matthew L. Lippert, on the
briefs).

1

Renee Cadmus argued the cause for amicus curiae Legal Services of New Jersey (Legal Services of New Jersey, attorneys; Melville D. Miller, Dawn K. Miller, Maryann Flanigan, and Robert Casagrand, on the brief).

Linda E. Fisher argued the cause for amicus curiae Seton Hall Law School Center for Social Justice (Seton Hall Law School Center for Social Justice, attorneys; Linda E. Fisher and Margaret L. Jurow, on the brief).

Joseph Lubertazzi argued the cause for amicus curiae New Jersey Business & Industry Association (McCarter & English, attorneys; Joseph Lubertazzi, Steven Beckelman, David R. Kott, and Scott M. Weingart, of counsel and on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In 2005, defendant Javier Torres signed a promissory note (Note) and executed a residential mortgage (Mortgage) with his wife, defendant Dora M. Dillman. Several years later, Torres defaulted on his obligations under the Note. The entity that had possessed the Note, CitiMortgage, Inc. (CitiMortgage), then discovered that it had lost the original Note but had retained a digital copy setting forth its terms. CitiMortgage assigned the Mortgage and its interest in the Note to plaintiff Investors Bank (Investors).

Investors filed this foreclosure action. Relying on a provision of the Uniform Commercial Code (UCC) adopted in New Jersey, N.J.S.A. 12A:3-309, defendants challenged Investors' right to enforce the Note, based on the

2

loss of the original. The trial court rejected that challenge, granted summary judgment in Investors' favor, and ordered Investors to indemnify defendants against any liability in the event that another party were to produce the original Note and attempt to enforce it against Torres.

Defendants appealed the trial court's grant of summary judgment. The Appellate Division declined to interpret N.J.S.A. 12A:3-309 to bar Investors from enforcing the lost Note. Citing New Jersey law recognizing the validity of assignments such as the one at issue here and the equitable principle of unjust enrichment, the Appellate Division affirmed the trial court's judgment. Investors Bank v. Torres, 457 N.J. Super. 53, 57-66 (App. Div. 2018).

We affirm as modified the Appellate Division's judgment. Relying on two statutes addressing assignments, N.J.S.A. 2A:25-1 and N.J.S.A. 46:9-9, as well as common-law assignment principles, we hold that Investors had the right as an assignee of the Mortgage and transferee of the Note to enforce the Note. We construe N.J.S.A. 12A:3-309 to address the rights of CitiMortgage as the possessor of a note or other instrument at the time that the instrument is lost, but not to supplant New Jersey assignment statutes and common law in the setting of this appeal or to preclude an assignee in Investors' position from asserting its rights according to the Note's terms. Read together, N.J.S.A. 12A:3-309, N.J.S.A. 2A:25-1, and N.J.S.A. 46:9-9 clearly authorized the

3

assignment and entitled Investors to enforce its assigned Mortgage and transferred Note. We do not rely on the equitable principle of unjust enrichment invoked by the Appellate Division. See Investors Bank, 457 N.J. Super. at 62-63.

We conclude that the trial court was presented with competent evidence that CitiMortgage had possessed the Note but misplaced it, that there was no genuine issue of material fact as to Investors' right to enforce the Note, and that the trial court adequately protected Torres from the threat of double liability. We therefore hold that the trial court properly granted summary judgment in Investors' favor and entered a judgment of foreclosure.

I.

A.

On October 28, 2005, defendant Javier Torres signed the Note. He promised to pay $650,000 plus interest to the order of the lender identified in the Note as AMRO Mortgage Group, Inc. (ABN). The Note confirmed Torres's understanding that ABN was authorized to transfer the Note and memorialized his agreement that ABN "or anyone who takes this Note by transfer and who is entitled to receive payments under this Note" would be considered the "Note Holder." The Note was secured by the October 28, 2005 Mortgage on defendants' residential property in Woodcliff Lake, New Jersey.

4

ABN subsequently merged into CitiMortgage, which succeeded to its interest in the Note executed by Torres and the Mortgage executed by both defendants.

On September 15, 2008, CitiMortgage and defendants entered into a loan modification agreement which lowered the interest rate on the loan and extended the maturity date on the Note by three years.

On February 1, 2010, Torres defaulted on the Note.

B.

CitiMortgage filed a foreclosure action against defendants on November 8, 2010. While that action was pending, CitiMortgage discovered that it no longer possessed the original Note. Nonetheless, CitiMortgage moved for summary judgment.

The trial court granted in part and denied in part CitiMortgage's summary judgment motion. The court stated that there was a disputed issue of material fact as to CitiMortgage's assertion "that it acquired possession of the Note and Mortgage on September 7, 2007 and that it remains in possession of same." The court scheduled a summary hearing to resolve that question. CitiMortgage then voluntarily dismissed its foreclosure action without prejudice.

5

On October 22, 2013, a CitiMortgage representative executed a Lost Note Affidavit. The affiant stated that after the Note was executed by Torres and delivered to CitiMortgage, "the original Note was misplaced, lost or destroyed." He further represented that the Note was not found despite a "thorough and diligent search" during which CitiMortgage "[s]earched loan files and imaged documents." The affiant asserted in the Lost Note Affidavit that CitiMortgage was the "the lawful owner of the note," and had not "cancelled, altered, assigned or hypothecated the note."

CitiMortgage attached a digital copy of the Note without endorsements to its Affidavit and represented that after the copy was made, the Note had been "properly endorsed." The digital copy set forth the terms of the Note.

C.

On September 2, 2014, in accordance with the Fair Foreclosure Act, N.J.S.A. 2A:50-56, CitiMortgage served on Torres a Notice of Default and Intention to Foreclose (NOI). On the NOI, CitiMortgage listed itself as the loan servicer, and listed Investors as the lender.

On November 20, 2014, CitiMortgage assigned to Investors "all beneficial interest under" the Mortgage, thus conveying its right to enforce the Note and Mortgage to Investors. The assignment provided that "[t]he transfer of the mortgage and accompanying rights was effective at the time the loan

6

was sold and consideration passed to [Investors]." The assignment was recorded in the Bergen County Clerk's Office.

Investors then filed this foreclosure action in the Chancery Division. Defendants filed an answer, asserting as an affirmative defense that Investors "cannot enforce the note because it is neither a possessor of the note, a holder in due course, or a non-holder with a right to enforce."

After the parties conducted discovery, Investors moved for summary judgment pursuant to Rules 4:46-1 and 4:46-2. Investors submitted to the trial court the Lost Note Affidavit and the digital copy of the Note. To support the admissibility of those documents as business records under N.J.R.E. 803(c)(6), Investors submitted a certification by a CitiMortgage executive with responsibility for document control. The certification stated that CitiMortgage's business records that are maintained for the purpose of servicing mortgage loans were "made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records"; that the records were "kept in the course of business activity conducted regularly" by CitiMortgage; and that it was the "regular practice of [CitiMortgage's] mortgage servicing business to make [those] records."

In the certification, CitiMortgage's representative acknowledged that Investors did not have the original Note and referred the court to the Lost Note Affidavit for an explanation of the missing Note. CitiMortgage's representative asserted that, despite the loss of the original Note, Investors had standing to enforce the Note pursuant to N.J.S.A. 12A:3-309.

Defendants opposed Investors' summary judgment motion. They contested Investors' standing based primarily on the fact that Investors did not have the original Note. They also asserted that the NOI served by CitiMortgage in advance of the foreclosure action was defective because the NOI prematurely designated Investors as the lender two months before CitiMortgage assigned the Mortgage to Investors.

The trial court granted Investors' summary judgment motion. The court reasoned that a plaintiff in a foreclosure action must demonstrate either possession of the note or a valid assignment of the mortgage predating the filing of the foreclosure complaint; in its view, Investors had proven that it was assigned the mortgage two months before it filed its action. Without expressly ruling on the admissibility of the documents, the court acknowledged that Investors had provided a Lost Note Affidavit and a digital copy of the Note. It stated that "the Office of Foreclosure will address the lost note when [Investors] files for final judgment."

8

The trial court, however, agreed with defendants that CitiMortgage had prematurely listed Investors as the lender on its NOI prior to CitiMortgage's assignment of the mortgage to Investors. It therefore barred Investors from filing for final judgment for sixty days.

After the expiration of the sixty-day period prescribed by the trial court, Investors filed an application for final judgment with the Office of Foreclosure. Defendants renewed their objection to foreclosure based on their argument that Investors was not a holder of the Note under N.J.S.A. 12A:3-309. The Office of Foreclosure remanded that dispute to the trial court for resolution.

The trial court rejected defendants' argument. The court held that Investors had proven the terms of the Note by producing the digital copy of that instrument, and that the assignment established Investors' right to enforce the Note. The court required Investors to indemnify defendants "should another party attempt to enforce the lost note."

The trial court remanded the matter to the Office of Foreclosure. Final judgment was entered in Investors' favor on January 25, 2017.

D.

Defendants appealed the final judgment of foreclosure.

Rejecting the interpretation of N.J.S.A. 12A:3-309 urged by defendants, the Appellate Division declined to construe that provision to bar a party that is the assignee of a mortgage and the transferee of a lost note from enforcing those instruments. Investors Bank, 457 N.J. Super. at 58-60. The court held that "a person who was both in possession of a note and entitled to enforce it when the loss occurred may enforce that note and may transfer that right to another" and "a subsequent transferee need only prove 'the terms of the instrument and the person's right to enforce the instrument' as required by [N.J.S.A. 12A:3-309(b)]." Id. at 60.

The Appellate Division viewed its interpretation of the statute to be consonant with the equitable doctrine of unjust enrichment. Id. at 62-63. It reasoned that if it were to adopt defendants' argument, it would deprive Investors of the benefit of its bargain with CitiMortgage and permit Torres "to stay in the mortgaged premises and continue to ignore his obligations to pay principal, interest, taxes and insurance premiums, adding to a debt that already exceeds $900,000." Ibid. The Appellate Division further held that the Lost Note Affidavit was properly authenticated and qualified as a business record under N.J.R.E. 803(c)(6). Id. at 63-64.

10

Accordingly, the Appellate Division concluded that the trial court had properly granted Investors' motion for summary judgment. It affirmed the judgment of foreclosure. Id. at 57-66.

E.

We granted defendants' petition for certification. 236 N.J. 594 (2019). We also granted the motions of Legal Services of New Jersey, Seton Hall Law Center for Social Justice, and the New Jersey Business and Industry Association to appear as amici curiae.

II.

A.

Defendants contest the admissibility of the Lost Note Affidavit as a business record pursuant to N.J.R.E. 803(c)(6). They argue that N.J.S.A. 12A:3-309 plainly bars a party that possessed a lost promissory note before it was lost from transferring its interests under that note after the loss. Defendants assert that because Investors was not in possession of the Note when it was lost, it has no right as an assignee to enforce that Note in its foreclosure action. They observe that UCC section 3-309 was amended in 2002 to expressly authorize a transferee to enforce a lost instrument if the transferee "directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when the loss occurred."

11

They claim that because the New Jersey Legislature did not amend N.J.S.A. 12A:3-309 to incorporate that 2002 amendment, it did not intend that assignees in Investors' position be permitted to enforce lost instruments such as the Note at issue here. Defendants argue that this case does not implicate principles of unjust enrichment because Investors can extricate itself from its transaction with CitiMortgage and Torres will be required to pay his debt to CitiMortgage even if foreclosure is denied.

B.

Investors counters that, under N.J.S.A. 2A:25-1 and the common law, any contract right is assignable unless its assignment is prohibited by law. It construes N.J.S.A. 12A:3-309(a) not to limit the use of a Lost Note Affidavit to the original holder of the instrument or prohibit assignment of a note that has been lost, and contends that the statute imposes no obstacle to the assignment in this case. Investors asserts that defendants' interpretation of the statute would significantly interfere with the secondary market for mortgages by allowing only the holder at the time of loss to foreclose on a lost note, thus precluding any assignment of the mortgage. It argues that the Lost Note Affidavit was admissible as a business record under N.J.R.E. 803(c)(6).

12

C.

Amicus curiae Legal Services of New Jersey contends that New Jersey's statutory scheme for the enforcement of negotiable mortgage notes is premised on the physical possession of the note, not its ownership. It argues that N.J.S.A. 12A:3-309 unambiguously authorizes enforcement of a lost note only by the last party that had a right to enforce the note and actually possessed the note before it was lost. During oral argument, Legal Services of New Jersey asserted that under Morris Canal & Banking Co. v. Fisher, 9 N.J. Eq. 667 (E. & A. 1855), notes are not choses in action that would be assignable under N.J.S.A. 2A:25-1, but choses in possession.

D.

Amicus curiae Seton Hall Law Center for Social Justice asserts that only a party that had physical possession of a note when it was lost can enforce that note. It argues that if we accept its position, our ruling would properly require lenders to treat documents relating to residential mortgages with care, and would encourage assignees of lost instruments to modify or adjust the debt so that borrowers can retain their homes and continue to repay their debt. The Center for Social Justice asserts that defendants would not receive a windfall if they were to prevail because they will be expected to make mortgage payments even if the judgment of foreclosure is reversed.

13

E.

Amicus curiae the New Jersey Business and Industry Association cites Appellate Division cases holding that a plaintiff in foreclosure may establish standing either by showing its possession of the note or establishing that it was assigned the note before it filed the original complaint. It argues that the Legislature expressed no contrary intent in N.J.S.A. 12A:3-309, which was intended to protect borrowers from the threat of double liability based on a single note. It contends that N.J.S.A. 12A:3-309 does not govern assignments addressed in N.J.S.A. 2A:25-1 and N.J.S.A. 46:9-9 and asserts that New Jersey assignment law supports Investors' position in this appeal.

III.

A.

In two statutes dating from the nineteenth century, the Legislature expressed a strong policy favoring the assignment of an array of contractual rights. When N.J.S.A. 2A:25-1 was first enacted in 1898, it provided that

> [a]ll bills, bonds and other writings, whether sealed or not, containing any agreement for the payment of money, and all contracts for the sale and conveyance of any real estate, . . . and all other choses in action arising on contracts, shall be assignable at law, and the assignee or assignees may sue thereon in his, her or their own names.
>
> [L. 1898, c. 228, § 38.]

In its current version, the statute provides in relevant part that

> [a]ll contracts for the sale and conveyance of real estate, all judgments and decrees recovered in any of the courts of this State or of the United States or in any of the courts of any other state of the United States and all choses in action arising on contract shall be assignable, and the assignee may sue thereon in his own name. In such an action, the person sued shall be allowed, not only all set-offs, discounts and defenses he has against the assignee, but also all set-offs, discounts and defenses he had against the assignor before notice of such assignment was given to him.

> [N.J.S.A. 2A:25-1.]

Case law underscores the principle that rights arising by contract are generally assignable, subject to exceptions for anti-assignment contractual language, statutes prohibiting the assignment of certain categories of contractual rights, and other expressions of public policy against the assignment of specific interests. See Aronsohn v. Mandara, 98 N.J. 92, 99 (1984) ("If the contract contains no prohibition on assignment, such rights may be assigned in the absence of any public policy reason to the contrary."); Somerset Orthopedic Assocs., P.A. v. Horizon Blue Cross & Blue Shield of N.J., 345 N.J. Super. 410, 415-18 (App. Div. 2001) (noting that although courts have enforced anti-assignment contractual language in many settings, "contract rights are generally assignable except where assignment is prohibited by operation of law or public policy"); Kimball Int'l, Inc. v. Northfield Metal

15

Prods., 334 N.J. Super. 596, 612 (App. Div. 2000) (stating that "[o]ur courts

have broadly construed" N.J.S.A. 2A:25-1 to enforce assignments of choses in

action).[1]  And, "[i]n the absence of any provision to the contrary, the

---

[1]    We acknowledge the contention made by Legal Services of New Jersey at oral argument that under Morris Canal, 9 N.J. Eq. at 698-700, notes are not choses in action, but choses in possession, and are thus not assignable pursuant to N.J.S.A. 2A:25-1.  On close examination, we cannot agree with that contention.  Although the Court in Morris Canal held that the bonds in dispute in that case were negotiable instruments ordinarily conveyed by delivery, id. at 699-700, we do not read that case to stand for the proposition that negotiable instruments can be conveyed only by delivery.

In Morris Canal, the defendants, the Morris Canal and Banking Company, executed bonds, made payable to the bearer, and secured by a mortgage.  Id. at 675.  The original holder of those bonds sold them to the plaintiff.  Ibid.  When the defendants failed to pay the interest due on the bonds, the plaintiff filed for foreclosure.  Id. at 675-76.  The Court noted that, ordinarily, bonds "cannot be assigned so as to give a right of action to the assignee," even if payable to the bearer.  Id. at 698.  A New Jersey statute, however, authorized the assignment of bonds.  Ibid.  Further, assignment of the bonds "may be by a delivery for . . . valuable consideration, without any writing."  Ibid. (emphasis added).  Because the bonds were payable to the bearer, the Court found that the bonds were negotiable instruments and the common usage was to pass such bonds by delivery.  Id. at 699-700.  Therefore, the plaintiff, as the present possessor of the bonds, held complete title to the bonds and no assignment in writing was needed.  Id. at 700-01.

Although the court in Morris Canal made clear that when a negotiable instrument is payable to the bearer, delivery is sufficient to grant complete title, it did not hold that delivery constituted the only method of conveying such a negotiable instrument, or convert it into a chose in possession.  Id. at 698-701.  Indeed, cases decided after Morris Canal made clear that under New Jersey law, promissory notes such as the Note at issue here are considered choses in action.  See, e.g., Erlich v. Mulligan, 104 N.J.L. 375, 378 (E. & A. 1928) (holding that a promissory "note was a chose in action and expressly

16

assignment of a chose in action includes, as incident to the chose, all securities and liens held by the assignor as collateral to the claim, and all rights incidental thereto." Westville Land Co. v. Handle, 112 N.J.L. 447, 457 (Sup. Ct. 1934).

In N.J.S.A. 46:9-9, first enacted in 1863, the Legislature specifically addressed the assignability of mortgages on real estate. As currently drafted, the statute provides that

> [a]ll mortgages on real estate in this State, and all covenants and stipulations therein contained, shall be assignable at law by writing, whether sealed or not, and any such assignment shall pass and convey the estate of the assignor in the mortgaged premises, and the assignee may sue thereon in his own name, but, in any such action by the assignee, there shall be allowed all just set-offs and other defenses against the assignor that would have been allowed in any action brought by the assignor and existing before notice of such assignment.
>
> [N.J.S.A. 46:9-9.]

Courts applying N.J.S.A. 46:9-9 to assignments of mortgages require that an assignee seeking standing to foreclose present "an authenticated assignment indicating that it was assigned the note before it filed the original

---

assignable" by statute); Polhemus v. Prudential Realty Corp., 74 N.J.L. 570, 578 (E. & A. 1907) (holding that when a note "passed into the possession of the Trenton Trust and Safe Deposit Company, as holders for value, before maturity, it had legal inception as a note, and became a chose in action, with all the qualities ordinarily incident thereto"). The Note at issue here is a chose in action subject to assignment under N.J.S.A. 2A:25-1.

17

complaint." <u>Deutsche Bank Nat'l Tr. Co. v. Mitchell</u>, 422 N.J. Super. 214, 225 (App. Div. 2011); <u>see also</u> <u>Wells Fargo Bank, N.A. v. Ford</u>, 418 N.J. Super. 592, 600 (App. Div. 2011) (reversing the grant of summary judgment in favor of Wells Fargo where "the purported assignment of the mortgage, which an assignee must produce to maintain a foreclosure action, <u>see</u> N.J.S.A. 46:9-9, was not authenticated in any manner").

B.

1.

When it enacted New Jersey's version of the UCC in 1995, <u>see</u> <u>L.</u> 1995, <u>c.</u> 28, the Legislature prescribed the manner in which courts should reconcile UCC provisions with other potentially relevant law, such as New Jersey statutory and case law governing assignments. It stated that "[u]nless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity . . . supplement its provisions." N.J.S.A. 12A:1-103(b). The Legislature adopted the Comment of the UCC drafters, the American Law Institute and the National Conference of Commissioners on Uniform State Laws. That comment explained,

> [t]he Uniform Commercial Code was drafted against the backdrop of existing bodies of law, including the common law and equity, and relies on those bodies of law to supplement it[s] provisions in many important ways. At the same time, the Uniform Commercial Code is the primary source of commercial law rules in areas

18

that it governs, and its rules represent choices made by its drafters and the enacting legislatures about the appropriate policies to be furthered in the transactions it covers. Therefore, while principles of common law and equity may <u>supplement</u> provisions of the Uniform Commercial Code, they may not be used to <u>supplant</u> its provisions, or the purposes and policies those provisions reflect, unless a specific provision of the Uniform Commercial Code provides otherwise. In the absence of such a provision, the Uniform Commercial Code preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies.

[N.J.S.A. 12A:1-103 cmt. 2.]

The Legislature adopted the Comment of the UCC drafters, which stated that "[w]hen the other law relating to a matter within the scope of the [UCC] is a statute, the principles of subsection (b) remain relevant to the court's analysis of the relationship between that statute and the [UCC]." N.J.S.A. 12A:1-103 cmt. 3.

Accordingly, to the extent that N.J.S.A. 2A:25-1, N.J.S.A. 46:9-9, and common-law assignment principles are not inconsistent with the UCC's text or aims, New Jersey's statutory and case law favoring assignments apply to the transfer of rights that gave rise to this appeal.

2.

To make that determination, we look to N.J.S.A. 12A:3-309's legislative goals and the terms of the statute itself.

19

For purposes of Article 3, the Legislature defined a "'[p]erson entitled to enforce' an instrument" as

> the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to [N.J.S.A.] 12A:3-309 . . . .  A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.
>
> [N.J.S.A. 12A:3-301.]

Thus, under N.J.S.A. 12A:3-301, a person who does not possess the instrument when that person attempts to enforce it may nonetheless do so if N.J.S.A. 12A:3-309's standard is met.  That section provides as follows:

> a.  A person not in possession of an instrument is entitled to enforce the instrument if the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, the loss of possession was not the result of a transfer by the person or a lawful seizure, and the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.
>
> b.  A person seeking enforcement of an instrument under subsection a. of this section must prove the terms of the instrument and the person's right to enforce the instrument.  If that proof is made, [N.J.S.A.] 12A:3-308 applies to the case as if the person seeking enforcement had produced the instrument.  The court may not enter judgment in favor of the person seeking enforcement

20

> unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.
>
> [N.J.S.A. 12A:3-309.]

The drafters of the model UCC expressed concern that a debtor might confront not only a claim by the party who possessed the instrument when it was lost and seeks to enforce it, but a subsequent claim by a party that somehow acquired the original. See U.C.C. § 3-309 cmt. (1990). They cautioned courts not to enter judgment without ensuring "that the defendant will be adequately protected against a claim to the instrument by a holder that may appear at some later time." Ibid.; accord N.J.S.A. 12A:3-309 (adopting that comment).

The drafters of UCC section 3-309 also explained that "the rights stated [in that provision] are those of 'a person entitled to enforce the instrument' at the time of loss rather than those of an 'owner' as in former Section 3-804." U.C.C. § 3-309 cmt. (1990). The provision thus addresses the rights of a party that was entitled to enforce the negotiable instrument at the moment it disappeared, not those of a party assigned the right to enforce the instrument at a later stage.

21

In Dennis Joslin Co., LLC v. Robinson Broadcasting Corp., 977 F. Supp. 491, 494-95 (D.D.C. 1997), the court interpreted the District of Columbia's version of UCC section 3-309 more restrictively than its drafters' comments suggest it was intended. There, the district court viewed D.C. Code section 28:3-309 (1995) to allow only the person who was in possession of the instrument when it was lost to enforce that instrument, thus barring any claim by a subsequent assignee. Ibid. The court acknowledged that "there does not appear to be a logical reason to distinguish between a person who was in possession at the time of the loss and one who later comes into possession of the rights to the note." Id. at 495. It nonetheless read the statute to "mandate[] that the plaintiff suing on the note must meet two tests, not just one: it must have been both in possession of the note when it was lost and entitled to enforce the note when it was lost." Ibid.[2]

_____

[2] Following Dennis Joslin Co., several courts construed their state's version of UCC section 3-309 to require proof of possession at the time that the note was lost in order to enforce the note. In re Harborhouse of Gloucester, LLC, 505 B.R. 365, 369-72 (Bankr. D. Mass.), aff'd, 523 B.R. 749 (B.A.P. 1st Cir. 2014); In re Kemp, 440 B.R. 624, 632-33 (Bankr. D.N.J. 2010); Marks v. Braunstein, 439 B.R. 248, 251 (Bankr. D. Mass. 2010); McCay v. Capital Res. Co., Ltd., 940 S.W.2d 869, 870-71 (Ark. 1997); Seven Oaks Enters., L.P. v. Devito, 198 A.3d 88, 99-100 (Conn. App. Ct.), appeal denied, 197 A.3d 893 (Conn. 2018); Emerald Portfolio, LLC v. Outer Banks/Kinnakeet Assocs., LLC, 790 S.E.2d 721, 725 (N.C. Ct. App. 2016); U.S. Bank N.A. Tr. v. Jones, 71 N.E.3d 1233, 1239-40 (Ohio Ct. App. 2016); SMS Fin. XXV, LLC v. Corsetti, 186 A.3d 1060, 1066-67 (R.I. 2018).

22

In the wake of <u>Dennis Joslin Co.</u>, the drafters of the model UCC amended section 3-309 in 2002. Through that amendment, they clarified that a transferee may enforce a lost promissory note if the transferee "directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred." <u>See</u> U.C.C. § 3-309(a)(1)(B) (2002). The drafters also added comments to section 3-309 in 2002. The second comment to that section states in relevant part:

> Subsection (a) is intended to reject the result in <u>Dennis Joslin Co. v. Robinson Broadcasting Corp.</u>, 977 F. Supp. 491 (D.D.C. 1997). A transferee of a lost instrument need prove only that its transferor was entitled to enforce, not that the transferee was in possession at the time the instrument was lost. The protections of subsection (a) should also be available when instruments are lost during transit, because whatever the precise status of ownership at the point of loss, either the sender or the receiver ordinarily would

<hr>

Other courts interpreted mirror provisions of UCC section 3-309 to authorize an assignee to enforce its rights under a note lost prior to the assignment. <u>In re Caddo Parish-Villas S., Ltd.</u>, 250 F.3d 300, 302 (5th Cir. 2001); <u>In re Allen</u>, 472 B.R. 559, 566-67 (B.A.P. 9th Cir. 2012); <u>Atl. Nat'l Tr., LLC v. McNamee</u>, 984 So. 2d 375, 376-79 (Ala. 2007); <u>YYY Corp. v. Gazda</u>, 761 A.2d 395, 398-401 (N.H. 2000).

In addition, a Pennsylvania court enforced a lost note based on Pennsylvania's counterpart to N.J.S.A. 12A:3-203, which addresses the effect of a transfer of a negotiable instrument by delivery of the instrument. <u>See</u> <u>Bobby D. Assocs. v. DiMarcantonio</u>, 751 A.2d 673, 676 (Pa. Super. Ct. 2000). That provision was not raised by the parties to this appeal, nor was it relied on by either the trial court or the Appellate Division in this case.

have been entitled to enforce the instrument during the course of transit.

[U.C.C. § 3-309 cmt. 2 (2002).]

Specifically addressing the transferee of a lost negotiable instrument for the first time in section 3-309, the drafters thus made clear that the provision was not intended to bar a transferee from seeking to enforce a negotiable instrument merely because the transferee did not possess the instrument at the moment it was lost. Ibid.

The New Jersey Legislature did not alter the language of N.J.S.A. 12A:3-309 to conform to the 2002 amendment to UCC section 3-309. Our statute retains the model UCC's pre-2002 language, which does not address the rights of transferees.

## C.

## 1.

We construe the statutes at issue in accordance with familiar principles. A statute's plain language serves as "the best indicator" of the Legislature's intent. DiProspero v. Penn, 183 N.J. 477, 492 (2005). "When the provisions of a statute are clear and unambiguous, they should be given their literal significance, unless it is clear from the text and purpose of the statute that such meaning was not intended." Turner v. First Union Nat'l Bank, 162 N.J. 75, 84 (1999). When we discern the meaning of the Legislature's selected words, we

24

may "draw inferences based on the statute's overall structure and composition." State v. S.B., 230 N.J. 62, 68 (2017). If the Legislature's intent is clear on the face of the statute, then the "interpretive process is over." Richardson v. Bd. of Trs., PFRS, 192 N.J. 189, 195 (2007).

2.

By its plain terms, N.J.S.A. 12A:3-309 governs the rights of a party that was "entitled to enforce" a lost note or other instrument at the time that it was lost. See N.J.S.A. 12A:3-309 cmt. (commenting that the "rights stated are those of 'a person entitled to enforce the instrument' at the time of loss"). In this case, CitiMortgage was the party "in possession of the instrument and entitled to enforce it when loss of possession occurred." See N.J.S.A. 12A:3-309(a). Had CitiMortgage not assigned the Mortgage to Investors, N.J.S.A. 12A:3-309 would have entitled it to enforce the Note against defendants.

The New Jersey version of UCC section 3-309, however, is silent regarding the rights of an assignee of a mortgage and the transferee of a note when the original note executed by the mortgagor has been lost. See N.J.S.A. 12A:3-309(a). There is no suggestion -- let alone clear evidence -- that the Legislature intended the provision to displace New Jersey's statutes and common law on assignments, or to nullify assignments of mortgages that are valid and enforceable under that law. Like the Appellate Division, we decline

25

to read that statute to "preclud[e] enforcement by the assignee of a mortgage and the transferee of a lost note." Investors Bank, 457 N.J. Super. at 59.

Defendants observe that the Legislature did not amend N.J.S.A. 12A:3-309 following the 2002 amendment to UCC section 3-309. They urge us to infer that the Legislature therefore rejected the proposition clarified in that amendment, namely that a transferee of a lost negotiable instrument may enforce the lost note if it acquired ownership from a person entitled to enforce the instrument at the time it was lost. We decline to draw such an inference.

Legislative inaction is "a weak reed upon which to lean . . . in construing a statute." Amerada Hess Corp. v. Dir., Div. of Taxation, 107 N.J. 307, 322 (1987) (quoting 2A Sutherland Statutory Construction § 49.10 (4th ed. 1984)); see also Masse v. Bd. of Trs., PERS, 87 N.J. 252, 264 (1981) (noting that legislative inaction "demonstrates nothing more than that subsequent legislatures failed to act"). We consider only the language of N.J.S.A. 12A:3-309 as enacted in New Jersey and do not view that language to limit the rights of Investors, as an assignee and transferee under other statutory provisions or our case law, with respect to assignments.

If we were to construe N.J.S.A. 12A:3-309 as defendants suggest, and preclude the enforcement of an assigned right to a lost note because the assignee is not the party that lost the note, our decision would not simply

26

contravene N.J.S.A. 2A:25-1, N.J.S.A. 46:9-9, and our case law on assignments; it would also generate results that are arbitrary, unworkable, and unfair. Such an interpretation could bar a foreclosure action -- notwithstanding the defendant's failure over decades to make mortgage payments -- simply because a bank employee happens to misplace the original note that was in the bank's files. If defendants were to prevail, the loss or destruction by fire or flood of multiple notes relating to bundled mortgages would deprive assignees of their bargained-for rights and confer a windfall on each defaulting mortgagor. We share the Appellate Division's view that in this appeal, such an interpretation would produce "an absurd result -- allowing the defaulted defendant to remain in possession of a house obligation-free." Investors Bank, 457 N.J. Super. at 63.

In short, N.J.S.A. 12A:3-309 does not nullify Investors' rights as the assignee of the Mortgage and transferee of the lost Note. Instead, N.J.S.A. 2A:25-1, N.J.S.A. 46:9-9, and common-law assignment principles govern Investors' rights as CitiMortgage's assignee and the transferee of the lost Note.

IV.

A.

Against that backdrop, we review the trial court's entry of summary judgment in Investors' favor, applying the standard prescribed by Rule 4:46-

27

2(c).  Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012) (citing Henry v. Dep't of Human Servs., 204 N.J. 320, 330 (2010)).  That Rule provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).

When summary judgment is premised on a legal conclusion, we review that decision de novo, giving "no special deference to the legal determinations of the trial court."  Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

B.

We briefly address the evidentiary issue raised with respect to one aspect of the summary judgment record.  Defendants challenge the trial court's consideration of the Lost Note Affidavit and an attached digital copy of the Note in the summary judgment proceeding, arguing that the Affidavit was inadmissible because it was unauthenticated and that it did not qualify as a business record under N.J.R.E. 803(c)(6).  See R. 4:46-2 (addressing submission of affidavits in support of or opposition to summary judgment); R.

28

1:6-6 (authorizing courts to hear motions "on affidavits made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify"). We review the trial court's evidentiary ruling for abuse of discretion. Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008).

As the Appellate Division properly concluded, the Lost Note Affidavit was signed by a CitiMortgage representative before a notary public and was properly authenticated under N.J.R.E. 901. Investors Bank, 457 N.J. Super. at 63. Moreover, the Lost Note Affidavit was properly considered by the trial court because it qualifies as a business record under N.J.R.E. 803(c)(6). That Rule prescribes an exception to the hearsay rule for

> [a] statement contained in a writing or other record of acts, events, conditions, and, subject to Rule 808, opinions or diagnoses, made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the writing or other record was made in the regular course of business and it was the regular practice of that business to make it, unless the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy.
>
> [N.J.R.E. 803(c)(6).]

Defendants raise three arguments as to why the Lost Note Affidavit does not meet the standard of N.J.R.E. 803(c)(6): the document was prepared by CitiMortgage, not Investors; it was not clearly drafted at or near the time that the Note was lost and therefore does not satisfy N.J.R.E. 803(c)(6)'s second

29

factor; and it is not trustworthy, thereby failing to meet the third requirement of the Rule.

Defendants' objection to the Affidavit's admissibility based on the fact that it was CitiMortgage's record but is presented by Investors has no merit. Nothing in N.J.R.E. 803(c)(6) constrains the rule to records created by the same entity that is the proponent of the evidence at trial. Indeed, parties to litigation routinely seek the admission of documents created by other parties or nonparties under N.J.R.E. 803(c)(6).

Nor is the document inadmissible by virtue of the unknown amount of time that elapsed between CitiMortgage's discovery that the Note was lost and the drafting of the Affidavit; the date of that discovery is unclear, and CitiMortgage's representative certified that its business records are generally produced "at or near the time" of the event "from information provided by persons with knowledge of the activity."

Finally, the Lost Note Affidavit is not inherently untrustworthy as a document prepared for litigation, as defendants suggest. The Lost Note Affidavit was prepared more than a year before CitiMortgage assigned the Mortgage to Investors, and fifteen months before this action was filed. Moreover, even if we were to subject the Lost Note Affidavit to special scrutiny as a document prepared in anticipation of or for use in litigation, it

withstands such scrutiny.  CitiMortgage has no incentive to fabricate a claim that it lost the original Note and has searched for it, to no avail.  There is no dispute as to the terms of the lost Note; defendants do not contest the accuracy of the digital copy of the Note setting forth that instrument's terms.

We therefore concur with the Appellate Division that the trial court did not abuse its discretion when it considered the Lost Note Affidavit during the summary judgment proceedings.  See Investors Bank, 457 N.J. Super. at 63-64.

C.

The summary judgment record fully supports the trial court's determination that Investors had the right to enforce the Note notwithstanding the loss of the original.  It is uncontested that the terms of the Note were established by the digital copy submitted to the trial court.  There is no dispute that CitiMortgage had the right to enforce the Note under N.J.S.A. 12A:3-309 when it assigned the Mortgage and transferred the Note to Investors.  CitiMortgage clearly had the authority to assign to Investors the right to enforce the lost Note.

The summary judgment record also confirms CitiMortgage's valid assignment of its rights to Investors.  Investors presented to the trial court an authenticated copy of its recorded assignment, which makes clear the terms of

that assignment.  See R. 4:64-2(a) (authorizing proof of an assignment in a foreclosure action in the form of an original or "a legible copy of a recorded or filed document, certified as a true copy by the recording or filing officer or by a New Jersey attorney").  There is no genuine issue of material fact as to whether CitiMortgage intended to assign "the [M]ortgage and accompanying rights" to Investors.  Under N.J.S.A. 2A:25-1, N.J.S.A. 46:9-9, and the case law applying those statutes, the assignment was valid, and by its terms Investors acquired the right to enforce the lost Note.

Finally, the trial court achieved N.J.S.A. 12A:3-309's purpose of protecting the debtor, Torres, from the threat from liability to multiple claimants based on the same Note.  It required Investors to indemnify Torres against any liability in the event that a third party were to attempt to enforce the lost Note.

We thus concur with the Appellate Division that the trial court properly entered summary judgment pursuant to Rule 4:46-2 in Investors' favor. Investors Bank, 457 N.J. Super. at 64-66.[3]  We conclude that the Appellate Division properly affirmed the judgment of foreclosure.

---

[3]  We do not rely on the doctrine of unjust enrichment in this appeal, as the Appellate Division did.  See Investors Bank, 457 N.J. Super. at 62-63.  Our decision is premised on N.J.S.A. 12A:3-309, N.J.S.A. 2A:25-1, N.J.S.A. 46:9-9, and New Jersey case law on assignments.

V.

The judgment of the Appellate Division is affirmed as modified.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON's opinion.