NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3029-16T4

INVESTORS BANK,

      Plaintiff-Respondent,

v.

JAVIER TORRES,

      Defendant-Appellant,

and

MRS. JAVIER TORRES, his wife,
and DORA M. DILLMAN,

      Defendants.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| November 16, 2018 |
| APPELLATE DIVISION |

Argued September 13, 2018 – Decided  November 16, 2018

Before Judges Fuentes, Accurso and Moynihan.

On appeal from Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. F-001463-15.

Adam L. Deutsch argued the cause for appellants (Northeast Law Group, LLC, attorneys; Adam L. Deutsch, on the briefs).

Joshua N. Howley argued the cause for respondent (Sills Cummis & Gross PC, attorneys; Joshua N.

Howley, of counsel and on the brief; Matthew L. Lippert, on the brief).

The opinion of the court was delivered by

MOYNIHAN, J.A.D.

Defendant Javier Torres appeals from a final judgment of foreclosure entered following his February 1, 2010 default on a $650,000 promissory note; the note, alleged by plaintiff Investors Bank to be lost, was secured by a mortgage on defendant's home. We are unpersuaded by defendant's arguments that the motion judge: (1) misapplied the summary judgment standard;[1] (2) erred by failing to properly apply N.J.S.A. 12A:3-309 when considering the lost note issue – and accord the statute a textualist interpretation – and by inferring facts in favor of the party moving for summary judgment; (3) deferred the issue regarding the lost note to determination on final judgment;

---

[1] The summary judgment order entered on August 7, 2015 does not appear as an appealed order in defendant's notice of appeal or civil case information statement. It is well-settled that "only the judgments or orders or parts thereof designated in the notice of appeal . . . are subject to the appeal process and review." Campagna ex rel. Greco v. Am. Cyanamid Co., 337 N.J. Super. 530, 550 (App. Div. 2001). See also R. 2:5-1(e)(3)(i). Furthermore, "an appellate tribunal always has the authority to question whether its jurisdiction has been properly invoked." Silviera-Francisco v. Bd. of Educ. of Elizabeth, 224 N.J. 126, 143 (2016). However, pursuant to Rule 2:2-4, we are satisfied that the interest of justice warrants that we grant leave to appeal nunc pro tunc and review the entry of the summary judgment.

and (4) erred by considering an inadmissible lost-note affidavit. Consequently, we affirm.

Summary judgment should be granted if the court determines "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We review the motion judge's decision de novo and afford his ruling no special deference. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016). We "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party" in consideration of the applicable evidentiary standard, "are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Defendant challenges plaintiff's right to foreclose alleging plaintiff never owned or controlled the underlying debt. See Wells Fargo Bank, N.A. v. Ford, 418 N.J. Super. 592, 597 (App. Div. 2011). Plaintiff's assignor CitiMortgage, Inc. (Citi) acquired the note and mortgage through its merger with ABN AMRO Mortgage Group, Inc., the originating lender. See Suser v. Wachovia Mortg., F.S.B., 433 N.J. Super. 317, 321 (App. Div. 2013) (recognizing the right to enforce a mortgage can arise by operation of ownership of the asset

A-3029-16T4

through mergers or acquisitions). Citi later assigned the mortgage to plaintiff. The note was lost prior to the assignment. A Citi representative executed a lost-note affidavit which provided that the note "was misplaced, lost or destroyed" after execution by defendant and delivery to Citi, and "after a thorough and diligent search, which consisted of [searching] loan files and imaged documents," the original note could not be located.[2] The affidavit was executed over a year prior to Citi's November 20, 2014 assignment of the mortgage to plaintiff. Defendant contends the plain language of N.J.S.A. 12A:3-309(a) prohibits plaintiff's enforcement of the note because plaintiff did not possess the note at the time it was lost.

We follow our Supreme Court's statutory-interpretation cynosure:

> In construing any statute, we must give words "their ordinary meaning and significance," recognizing that generally the statutory language is "the best indicator of [the Legislature's] intent." DiProspero v. Penn, 183 N.J. 477, 492 (2005); see also N.J.S.A. 1:1-1 (stating that customarily "words and phrases shall be read and construed with their context, and shall . . . be given their generally accepted meaning"). Each statutory provision must be viewed not in isolation but "in relation to other constituent parts so that a sensible meaning may be given to the whole of the legislative scheme." Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012). We will not presume

---

[2] Defendant acknowledged Citi's right "to enforce the terms of the [l]oan and to receive payments under the [n]ote" when he entered into a loan modification agreement with Citi in 2008.

that the Legislature intended a result different from what is indicated by the plain language or add a qualification to a statute that the Legislature chose to omit. DiProspero, 183 N.J. at 493.

On the other hand, if a plain reading of the statutory language is ambiguous, suggesting "more than one plausible interpretation," or leads to an absurd result, then we may look to extrinsic evidence, such as legislative history, committee reports, and contemporaneous construction in search of the Legislature's intent. Id. at 492-93.

[Tumpson v. Farina, 218 N.J. 450, 467-68 (2014) (alterations in original).]

Inasmuch as our analysis involves more than subsection (a) of 3-309, we are mindful of the Court's prescription that

[s]tatutes must be read in their entirety; each part or section should be construed in connection with every other part or section to provide a harmonious whole. When reviewing two separate enactments, the Court has an affirmative duty to reconcile them, so as to give effect to both expressions of the lawmakers' will. Statutes that deal with the same matter or subject should be read in pari materia and construed together as a unitary and harmonious whole.

[In re Petition for Referendum on Trenton Ordinance 09-02, 201 N.J. 349, 359 (2010) (citations omitted).]

We have recognized that N.J.S.A. 12A:3-301 provides three categories of persons are entitled to enforce an instrument:

the holder of the instrument, a nonholder in possession of the instrument who has the rights of the holder, or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to 12A:3-

309 or subsection [(d)] of 12A:3-418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.
[Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 222-23 (App. Div. 2011) (citing N.J.S.A. 12A:3-301).]

The only applicable avenue to enforce a note for a person not in possession is pursuant to N.J.S.A. 12A:3-309, which provides:

a. A person not in possession of an instrument is entitled to enforce the instrument if the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, the loss of possession was not the result of a transfer by the person or a lawful seizure, and the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

b. A person seeking enforcement of an instrument under subsection [(a)] of this section must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, 12A:3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

A-3029-16T4

Unlike defendant, we do not read N.J.S.A. 12A:3-309(a) as precluding enforcement by the assignee of a mortgage and the transferee of a lost note.

We acknowledge that contrary holdings supporting defendant's position have been reached by other courts, most notably in <u>Dennis Joslin Co., LLC v. Robinson Broadcasting Corp.</u>, 977 F. Supp. 491, 495 (D.D.C. 1997) (determining the plain language of 3-309 "mandates that the plaintiff suing on the note must meet two tests, not just one: it must have been <u>both</u> in possession of the note when it was lost and entitled to enforce the note when it was lost"). But even the <u>Joslin</u> court recognized that "there does not appear to be a logical reason to distinguish between a person who was in possession at the time of the loss and one who later comes into possession of the rights to the note." <u>Ibid.</u>

Indeed, the <u>Joslin</u> decision was followed by a 2002 amendment to section 3-309 of the Uniform Commercial Code (UCC) to make express that a person who "has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred" is entitled to enforce the instrument – eliminating the possession requirement. U.C.C. § 3-309(a)(1)(B) (Am. Law Inst. & Unif. Law Comm'n 2002). Although the New Jersey Legislature has not adopted the amendment, we do not construe that inaction to signal a legislative intent to

preclude a transferee of a lost note from enforcing it. See Amerada Hess Corp. v. Director, Div. of Taxation, 107 N.J. 307, 322 (1987) (finding "the doctrine of probable legislative intent a more reliable guide than the so-called doctrine of legislative inaction. 'Legislative inaction has been called a "weak reed upon which to lean" and a "poor beacon to follow" in construing a statute.'" (quoting 2A C. Sands, Sutherland Statutory Construction, § 49.10 (4th ed. 1984))).

We thus determine that under New Jersey's version of 3-309 a person who was both in possession of a note and entitled to enforce it when the loss occurred may enforce that note and may transfer that right to another; a subsequent transferee need only prove "the terms of the instrument and the person's right to enforce the instrument" as required by subsection (b). This construction of the statutory language is grounded in both law and equity.

The legal community "almost universally" understands the assignment of a mortgage to include

> the transfer of the totality of the mortgagee's rights, that is, his right to the debt as well as to the lien securing it, and . . . that when one in terms assigns a mortgage, he intends, not an effective transfer of his rights as creditor against the land, but a transfer of his lien alone, which is an absolute nullity, not only ignores this ordinary use of the term "mortgage," but is also in direct contravention of the well[-]recognized rule that an instrument shall if possible be construed so as to give it a legal operation.

[5 Tiffany on Real Property § 1451 (3d ed. 1939); see also 29 N.J. Practice, Law of Mortgages § 11.2, at 754 (Myron C. Weinstein) (2d ed. 2001).]

The logical extension of that tenet was recognized by the former chief of the New Jersey Office of Foreclosure when he counselled that an assignee of a mortgage should "insist on receiving the note . . . because if the mortgagee has already transferred the mortgage note to another party, the mortgagee can no longer make a valid assignment of the mortgage." 29 N.J. Practice, Law of Mortgages § 11.2, at 761.

In keeping with the well-recognized principles regarding the assignment of mortgages, subsection (a) of 3-309 does not prohibit the transfer of a person's enforcement rights, as long as the person claiming to have lost a note possessed it and was entitled to enforce it when the loss occurred. That provision allows for a person to transfer the right to the debt under the lost note. Subsection (b) of 3-309 provides protection to an obligor if the claimed-lost note was previously transferred to another entity which also attempts enforcement, prohibiting entry of a judgment on the note unless the court finds the obligor "is adequately protected against loss that might occur by reason of

a claim by another person to enforce the instrument."[3]   The statutory framework, therefore, consonant with widely-accepted mortgage-assignment business practices, see, e.g., Sprint Commc'ns Co., v. APCC Servs., 554 U.S. 269, 276 (2008) (explaining courts recognized as early as the seventeenth century that anti-assignment rules are inconsistent with commercial needs), allows the assignment of a mortgage even if the note is lost; and for an assignee's enforcement of the transferred-lost note.

Importantly, we note that the Legislature provided that a person seeking to enforce a note need only prove its terms "and the person's right to enforce" it.   N.J.S.A. 12A:3-309(b).   The Legislature did not require the person enforcing the note to prove its possession as it provided in subsection (a).   The resultant plain reading of the combined provisions of the subsections is that a lost note may be transferred by a person who meets subsection (a)'s criteria, and that instrument may be enforced by a transferee who meets subsection (b)'s requirements.

This approach is in harmony with other New Jersey UCC provisions and the common-law principles of assignment recognized by courts for centuries. Pursuant to this "strong tradition" courts "have long found ways to allow

---

[3] The trial judge, in overruling defendant's objection to plaintiff's final judgment application, applied this provision and required plaintiff to "indemnify [d]efendant should another party attempt to enforce the lost note."

assignees to bring suit." Sprint Commc'ns, 554 U.S. at 285. The common-law principles of assignment are not preempted by our version of the UCC which makes no specific mention of the assignability of a lost note. In order to permit the widely-practiced assignment of obligations – especially those secured by mortgages – gap-filler provisions such as the doctrine of assignment are appropriate under N.J.S.A. 12A:1-103.[4] In construing the statutes, we heed the Legislature's mandate that our UCC "be liberally construed and applied to promote its underlying purposes and policies," N.J.S.A. 12A:1-103(a), one of which is "to permit the continued expansion of commercial practices through custom, usage, and agreement of the parties," N.J.S.A. 12A:1-103(a)(2). Permitting the transfer of a lost note promotes the UCC's purpose of expanding commercial practices of contract-parties such as Citi and plaintiff, which intended the transfer of rights to enforce the lost note along with the assignment of defendant's mortgage. Application of common-law assignment principles to the protections afforded obligors by the requirements of 3-309, therefore, properly supplements the UCC provisions.

---

[4] N.J.S.A. 12A:1-103(b) provides: "Unless displaced by the particular provisions of the [UCC], the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions."

A-3029-16T4

Our reading of both sections of 3-309 is also consistent with equitable principles that guard against unjust enrichment. "[T]he doctrine of unjust enrichment . . . rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 108 (App. Div. 1966). "A cause of action for unjust enrichment requires proof that '[a] defendant received a benefit and that retention of that benefit without payment would be unjust.'" Cty. of Essex v. First Union Nat'l Bank, 373 N.J. Super. 543, 549-50 (App. Div. 2004) (quoting VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994)).

Adoption of defendant's argument would not only deprive plaintiff of the benefit of its bargain with Citi, it would also allow defendant to stay in the mortgaged premises and continue to ignore his obligations to pay principal, interest, taxes and insurance premiums, adding to a debt that already exceeds $900,000. It would be unjust to preclude enforcement of the obligations defendant has disregarded since February 2010. Like the common-law assignment principles, the doctrine of unjust enrichment does not displace 3-309 or any other provision of our UCC. It supplements those provisions in the same manner as do the assignment principles.

12

We also reject defendant's argument that 3-309 precludes plaintiff's enforcement of the note because such argument produces an absurd result – allowing the defaulted defendant to remain in possession of a house obligation-free. See Turner v. First Union Nat'l Bank, 162 N.J. 75, 84 (1999) (holding "where a literal interpretation [of a statute] would create a manifestly absurd result, contrary to public policy, the spirit of the law should control").

We reject as meritless defendant's argument that the lost-note affidavit was inadmissible as presented because it was not properly authenticated. The affidavit, signed by the Citi representative before a notary public, was proved prima facie genuine; that is the only requirement to establish authenticity under N.J.R.E. 901. N.J.S.A. 2A:82-17; Konop v. Rosen, 425 N.J. Super. 391, 411 (App. Div. 2012). The testimony of the subscribing notary was not required to authenticate the document. N.J.R.E. 903.

Further, the circumstances surrounding the document sufficiently authenticated it. The affidavit sets forth: the actions taken to find the lost note; Citi's status as the note's lawful owner; and that Citi, as the note's seller, did not cancel, alter, assign or hypothecate the note. There was no reason for a representative of Citi – considering the terms of 3-309 – to make the statements set forth in the affidavit, if said statements were not true. If Citi did

not lose the note, it would have been easier to attach it. Instead, it admitted the note was lost, leaving the door ajar for defendant's arguments.

The lost-note affidavit was also properly qualified as a business record. A Citi vice-president reviewed the lost-note affidavit, a standard document effectively required by 3-309, and, as a person familiar with the business records Citi maintained, certified that the pre-requisites under N.J.R.E. 803(c)(6) to qualify it as a business record were met.[5] See State v. Matulewicz, 101 N.J. 27, 29 (1985) (recognizing the three well-established requirements for admitting evidence pursuant to the predecessor of N.J.R.E. 803(c)(6), the business record exception to the hearsay rule: "First, the writing must be made in the regular course of business. Second, it must be prepared within a short time of the act, condition or event being described. Finally, the source of the information and the method and circumstances of the preparation of the writing must justify allowing it into evidence."). The judge did not abuse his discretion by considering the lost-note affidavit. See Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008) ("In reviewing a trial court's evidential ruling, an appellate court is limited to examining the decision for abuse of discretion.").

---

[5] The affidavit was attached to her certification in support of plaintiff's motion for summary judgment.

A-3029-16T4

We do not agree with defendant's contention that the summary judgment standard was misapplied. When the moving party in a summary judgment motion satisfies its burden of proof, the burden shifts to the non-moving party to present evidence that there is a genuine issue for trial. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479-80 (2016); Brill, 142 N.J. at 529. The non-moving party may not satisfy its burden by merely making allegations or denials in its pleading, but must produce sufficient evidence to reasonably support a verdict in its favor. R. 4:46-5(a); G.D. v. Kenny, 205 N.J. 275, 304 (2011). The non-moving party cannot defeat a summary judgment motion by the identification of a disputed fact of an insubstantial nature. Brill, 142 N.J. at 529-30.

"The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises." Great Falls Bank v. Pardo, 263 N.J. Super. 388, 394 (Ch. Div. 1993) (citations omitted), aff'd, 273 N.J. Super. 542, 545 (App. Div. 1994). A lender's right to foreclose is an equitable right inherent in a mortgage, triggered by a borrower's failure to comply with the terms and conditions of the associated loan. S.D. Walker, Inc. v. Brigantine Beach Hotel Corp., 44 N.J. Super. 193, 202 (Ch. Div. 1957).

Defendant did not present any evidence of a genuine issue for trial. He did not challenge that plaintiff possessed the recorded assignment of mortgage

at the time it filed its complaint.  See Deutsche Bank Tr. Co. Ams. v. Angeles, 428 N.J. Super 315, 318 (App. Div. 2012).  He did not assert that he has been paying plaintiff or any other person on the outstanding note obligation; or that payment has been demanded from any other person; or that foreclosure has been commenced or threatened by any person.  Further, no evidence was presented demonstrating that the note was transferred or the mortgage was assigned to a party other than plaintiff.

We also reject defendant's argument that the discrepancy between two answers to interrogatories provided by a processor employed by Citi as plaintiff's servicer presented a genuine issue of fact.  The processor answered one interrogatory, "[p]laintiff is unaware of any . . . destruction or misplacement of documents pertinent to this matter," when asked to give details about "any correspondence, documents, memoranda, policies of insurance, contracts, reports or writings of any kind which in any way pertain to the subject matter of this lawsuit [that were] destroyed and/or misplaced."  The processor referred to that same answer, replying, "[s]ee response . . . above," when asked to "set forth a detailed description of the investigation and/or search process conducted" before deeming the note lost.  When asked to set forth the location of the note, the processor then answered that plaintiff was not in possession of the original note and referred to the lost-note affidavit.

A-3029-16T4

These arguably disputed facts are insubstantial in nature. Defendant has not offered any evidence that the note was not lost. The obviously mistaken answers are insufficient to support a finding in his favor. The balance of defendant's arguments is without sufficient merit to warrant discussion. <u>R.</u> 2:11-3(e)(1)(E).

The grant of summary judgment and entry of the final judgment of foreclosure were therefore proper.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION