**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1964-23

U.S. BANK TRUST NATIONAL
ASSOCIATION, not in its individual
capacity but solely as OWNER
TRUSTEE for RCF 2 ACQUISITION
TRUST,

     Plaintiff-Appellant,

v.

BRONX GIRLS FLIPS, LLC, LAYO
TOYIN OYAWUSI, VICTORIA O.
ODUNOWO, ROUCHELLE GLOVER,
MR. GLOVER, husband of
ROUCHELLE GLOVER,

     Defendants,

and

ALPHA FLOW TRANSITIONAL
MORTGAGE TRUST 2021-WL1,
formerly PML FUNDING, LLC,

     Defendant-Respondent.

_____

Argued January 28, 2025 – Decided February 4, 2025

Before Judges Susswein, Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. F-008670-23.

Christina A. Livorsi argued the cause for appellant (Day Pitney LLP, attorneys; Christina A. Livorsi and Chelsea Turiano, of counsel and on the briefs).

Joseph R. McCarthy argued the cause for respondent (Stark & Stark, PC, attorneys; Joseph R. McCarthy and Marshall T. Kizner, of counsel and on the brief).

PER CURIAM

In this residential foreclosure matter, plaintiff U.S. Bank Trust National Association, not in its individual capacity but solely as Owner Trustee for RCF 2 Acquisition Trust (U.S. Bank),[1] appeals from the March 4, 2024 Chancery Division order, which granted defendant Alpha Flow Transitional Mortgage Trust 2021-WL1's (Alpha)[2] motion for summary judgment, expunged and discharged the underlying mortgage, deemed the mortgage satisfied, and

___

[1] On October 4, 2021, U.S. Bank was assigned the loan and mortgage. Therefore, we reference U.S. Bank as plaintiff throughout the opinion. We further note that plaintiff's loan servicer changed on July 16, 2021 from Rushmore Loan Management Services LLC to Selene Finance LP.

[2] We reference Alpha as defendant throughout the opinion because its predecessor in interest, PML Funding LLC, assigned codefendant Bronx Girls Flips, LLC's mortgage to Alpha on April 30, 2021.

dismissed plaintiff's complaint with prejudice. Plaintiff also appeals the trial court's denial of its cross-motion for summary judgment. Having reviewed the record, parties' arguments, and governing legal principles, we affirm.

I.

In April 2008, codefendants Victoria Odunowo and Layo Toyin Oyawusi (the borrowers) purchased a residential property in Orange for $205,000. On April 30, Security Atlantic Mortgage loaned the borrowers $201,832 to finance the property, which an executed promissory note memorialized. The note provided for a fixed interest rate of 6.50% per annum and monthly loan payments of $1,275.72 beginning June 1. To secure the note, the borrowers executed a purchase money mortgage on the property. On June 6, the borrowers recorded their deed and mortgage with the Office of the Clerk of Essex County.

Under paragraph one of their mortgage, the borrowers were required to "pay when due the principal of, and interest on, the debt evidenced by the [n]ote and any prepayment and late charges due under the [n]ote." Additionally, they were responsible under paragraph two to pay "[t]axes, [i]nsurance, and [o]ther [c]harges." The mortgage's paragraph three provided for the "Application of Payments," stating:

> . . . All payments under [p]aragraphs [one] and [two]
> shall be applied by Lender as follows:

A-1964-23

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the [n]ote;

Fourth, to amortization of the principal of the [n]ote; and

Fifth, to late charges due under the [n]ote.

Paragraph nine of the mortgage addressed "Grounds for Acceleration of Debt," providing:

(a) Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including section 34l (d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. [§] 170lj-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property is sold or otherwise transferred (other than by devise or descent), and

4

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

On February 23, 2015, Odunowo conveyed title to the property by deed to Oyawusi, which was recorded on March 3. On February 12, 2018, Oyawusi executed a loan modification agreement with plaintiff's predecessor, Bayview Loan Servicing, LLC (Bayview),[3] modifying the monthly payments due to $1,663.93 in addition to an estimated monthly escrow payment of $635.19. On December 1, 2020, the borrowers defaulted on the loan.

On April 15, 2021, Oyawusi, conveyed title by deed to codefendants Bronx Girls Flips, LLC (Bronx Girls) and Rouchelle Glover, which was recorded.[4] On April 30, Bronx Girls executed a purchase money mortgage on the property in favor of PML Funding LLC (PML) to secure the financing in the

---

[3] Bayview was assigned the loan and mortgage on March 9, 2016.

[4] Oyawusi had inadvertently conveyed title by deed to Rouchelle Glover on April 15, 2021. On November 14, 2022, Glover conveyed title by deed to codefendant Bronx Girls, solely, which was recorded.

amount of $260,140, which was recorded on July 6. On April 30, PML assigned the Bronx Girls' mortgage to defendant. The April 30, HUD-1 property closing statement provided for "[p]er [d]iem [i]nterest for [m]ortgage [l]oan [p]ayoff (18 days)" in the amount of $549.54 and an "escrow hold-payoff" in the amount of $500.

By letter dated April 9, 2021, Rushmore Loan Management Services LLC (Rushmore), plaintiff's immediate predecessor's servicer, sent a loan payoff statement to the borrowers stating, the "figures [we]re good to April 16, 2021" and recited a "TOTAL AMOUNT TO PAY LOAN IN FULL" of $177,276.75. Rushmore's letter further stated: "[f]unds received on or after April 16 . . . require[d] [payment of] an additional $30.53 interest per [d]ay"; "[t]hese figures [we]re subject to final verification by the [n]oteholder"; "[t]here may be additional fees incurred for which [the borrowers] are responsible that are unknown as of the date of this letter"; and "[a] late charge of $41.15 will be assessed [fifteen] days after a current payment is due and should be added to the payoff total if received after that time." Rushmore instructed that the payoff amount was to be paid to its Wells Fargo account.

On May 7, Rushmore received a wire transfer from Entrust Solutions LLC (Entrust) in the amount of $177,887.35, and it specifically identified Odunowo

6

and Oyawusi as the borrowers, their loan identification number, and the property address. Rushmore did not apply the funds to the loan because the amount was twenty-one days past the "Good-Through Date" identified in plaintiff's payoff letter, and additional accumulated fees were not paid. On May 12, Oyawusi called Rushmore's loss mitigation team regarding the status of the funds. Rushmore held the funds for fourteen days before it wired the funds back to Entrust's JP Morgan Chase Bank account.

Rushmore's return notes indicated, "[r]eason for [the] return . . . payoff is short by $3,312.88 due to fees and costs and [e]scrow/[i]mpound [o]verdraft." The notes further stated, "bwr said will have attny contact us." The document memorializing Rushmore's created request to return Entrust's wire transfer indicated it made no contact with the borrowers and provided the funds were rejected and returned because the "payoff [wa]s short by $3,312.88." Rushmore's cash advice detail form noted the payment source was a third party, the department was loss mitigation, the principal balance was $171,440.84, and the funds received were $177,887.35.

On July 16, 2021, Selene Finance LP became the loan servicer after Rushmore. On September 27, 2022, Selene sent the borrowers a notice of intention to foreclose in accordance with the Fair Foreclosure Act, N.J.S.A.

2A:50-53 to -82. On October 4, plaintiff was assigned the borrowers' loan and mortgage.

On July 19, 2023, plaintiff filed a foreclosure action against the borrowers. On September 20, PML filed a contesting answer and counterclaim, which plaintiff answered. No other defendants answered the complaint. On October 3, defendant, as assignee of PML, filed a motion to intervene and to dismiss plaintiff's complaint for failure to state a claim. On November 20, plaintiff and defendant entered a consent order substituting defendant as the subsequent party of interest in the action and revising their motion briefing schedule. Defendant filed a statement of material facts pursuant to Rule 4:46-2, converting its motion to dismiss into a summary judgment motion. Defendant's motion requested the court to discharge plaintiff's mortgage and to compel plaintiff to accept $30.53 plus interest in full satisfaction of the mortgage. Plaintiff filed opposition and cross-moved for summary judgment, seeking to strike defendant's answer, defenses, and counterclaim, deem the matter uncontested, enter default, and transfer the matter to the Office of Foreclosure. Plaintiff filed a limited counter-statement of material facts. At oral argument, plaintiff's counsel represented to the trial court that the motions were ripe for the court to address on summary judgment.

A-1964-23

After argument, the court issued an oral decision accompanied by an order granting defendant summary judgment and denying plaintiff's cross-motion. The court concluded plaintiff was required to discharge the borrowers' mortgage because it should have accepted and applied the deficient payoff payment from defendant toward the borrowers' loan. It reasoned that after plaintiff applied defendant's payment, it could have waited to "discharge[] the [m]ortgage" until the limited remaining funds were paid. The court recognized the loan "contract was not with the new owners," but "was with the former owners." The court found plaintiff's "internal notes, d[id] not establish that anyone was advised that the wire was coming back." Because plaintiff held the funds for almost fourteen calendar days, the court found it was "too long," noting plaintiff had "accepted" the money and had "use of that money." Finally, the court determined "that the equities . . . favor an immediate discharge of this mortgage" because "on balance, [examining] . . . the actors here, . . . by a large margin, the blame falls squarely on the plaintiff for returning those funds, and in the manner they did it, without any foreknowledge by anyone."

On appeal, plaintiff argues the court erred: in granting summary judgment to defendant and discharging the mortgage because a genuine issue of material

9

fact exists as to whether plaintiff was required to accept the partial payment; and alternatively, in finding that plaintiff was barred from pursuing its foreclosure.

## II.

Our review of a trial court's summary judgment decision is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024); see also R. 4:46-2(c). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (alteration in original) (quoting Friedman v. Martinez, 242 N.J. 449, 472 (2020)). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Ibid. (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). To rule on summary judgment, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Vizzoni v. B.M.D., 459 N.J. Super. 554, 567 (App. Div. 2019) (quoting Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007)).

Generally, in an action to foreclose a mortgage, the only material issues are "the validity of the mortgage, the amount of the indebtedness, and the right

10

of the mortgagee to resort to the mortgaged premises." N.Y. Mortg. Tr. 2005-3 Mortg.-Backed Notes, U.S. Bank Nat'l Ass'n as Tr. v. Deely, 466 N.J. Super. 387, 397 (App. Div. 2021) (quoting Invs. Bank v. Torres, 457 N.J. Super. 53, 65 (App. Div. 2018), aff'd and modified, 243 N.J. 25 (2020)). We review a motion court's summary judgment "decision de novo and afford [its] ruling no special deference." Torres, 457 N.J. Super. at 56. A foreclosure action will be deemed uncontested if "none of the pleadings responsive to the complaint either contest the validity or priority of the mortgage or lien being foreclosed or create an issue with respect to plaintiff's right to foreclose it." R. 4:64-1(c)(2).

"[A] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Accordingly, legal questions of statutory interpretation are reviewed de novo. Bowser v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 165, 170-71 (App. Div. 2018).

### III.

On appeal, plaintiff argues for the first time that there are genuine issues of material fact in dispute regarding whether it "was required to accept or reject

the partial payment" defendant made. We note at oral argument before the trial court, plaintiff represented the foreclosure matter was ripe for summary judgment and did not argue further discovery was needed. Plaintiff relied on the established documentary record and largely undisputed course of events, as evidenced by plaintiff's January 12, 2024 limited "objections to the [s]tatement of [u]ndisputed [m]aterial [f]acts filed by [d]efendant." Plaintiff did not aver specific factual disputes regarding its authority to accept or reject the received deficient payoff from defendant. Rule 4:46-2(b).

"The filing of a cross-motion for summary judgment generally limits the ability of the losing party to argue that an issue raises questions of fact, because the act of filing the cross-motion represents to the court the ripeness of the party's right to prevail as a matter of law." Spring Creek Holding Co. v. Shinnihon U.S.A. Co., 399 N.J. Super. 158, 177 (App. Div. 2008). While we have "recognize[d] that there is no per se rule that the existence of cross-motions for summary judgment precludes a party from seeking . . . alternative relief," in the present matter, plaintiff affirmatively represented to the court the motions were ripe for summary judgment. Ibid.

Further, we generally decline to consider issues not raised below when an opportunity for such a presentation was available unless the questions raised on

A-1964-23

appeal concern jurisdiction or matters of great public interest. <u>Nieder v. Royal Indem. Ins. Co.</u>, 62 N.J. 229, 234 (1973); <u>see also</u> <u>Zaman v. Felton</u>, 219 N.J. 199, 226-27 (2014) (recognizing claims that are not presented to a trial court are inappropriate for consideration on appeal). Nevertheless, we have considered plaintiff's argument on the merits and are unpersuaded.

We reject plaintiff's arguments that it was required to return defendant's deficient payoff payment of the borrowers' loan and that the court erred in denying its summary judgment motion to deem its foreclosure matter uncontested pursuant to <u>Rule</u> 4:64-1(c). Plaintiff accelerated Odunowo's and Oyawusi's loan after default occurred and required payment of all sums due. The mortgage's uniform covenants section, paragraph one, required Odunowo and Oyawusi to "<u>pay when due</u> the principal of, and interest on, the debt evidenced by the [n]ote" as well as any late charges. (emphasis added). While accelerated, they were required to pay the loan amount due or face foreclosure.

"The plain language of the contract is the cornerstone of the interpretive inquiry; 'when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.'" <u>Barila v. Bd. of Educ. of Cliffside Park</u>, 241 N.J. 595, 616 (2020) (quoting <u>Quinn v. Quinn</u>, 225 N.J. 34, 45 (2016)). "The

interpretation of a contract is generally subject to de novo review." Arbus, Maybruch & Goode, LLC v. Cogen, 475 N.J. Super. 509, 515 (App. Div. 2023).

Paragraph three of the mortgage provided that "[a]ll payments under [p]aragraphs [one] and [two] shall be applied by [l]ender." Therefore, plaintiff was required to accept and apply defendant's deficient payoff amount of $177,887.35 toward the borrowers' loan. Plaintiff was thereafter not foreclosed from pursuing the remaining balance owed. Notably, the fifth subparagraph of paragraph three recognizes that the borrowers' payment toward the loan may be applied to "late charges due under the note," implicating contemplation that plaintiff must accept payment when the loan is not current. Therefore, we conclude no genuine issue of material fact is in dispute regarding plaintiff's requirement under the loan to have applied the payment received from defendant to the borrowers' accelerated sum due.

We also observe the performance of the parties subject to the note and mortgage are tempered by the implied covenant of good faith and fair dealing, which exists in every contract in New Jersey. See Wood v. N.J. Mfrs. Ins. Co., 206 N.J. 562, 577 (2011) ("Every party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." (quoting Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping

A-1964-23

Ctr. Assocs., 182 N.J. 210, 224 (2005))); see also Wilson v. Amerada Hess Corp., 168 N.J. 236, 250 (2001).

We further concur with the trial court's determination that equity requires plaintiff to discharge the borrowers' mortgage. "It is a maxim of equity that [one] who comes into a court of equity must enter with clean hands . . . ." Brown v. Rowland, 137 N.J. Eq. 462, 464 (1946). We discern no error in the court's findings that "equity follows the law" and that here, "there [wa]s no out in this mortgage anywhere or in the note that just says [plaintiff] can return money after they[ ha]ve received it." After plaintiff received defendant's wired $177,276.75 to pay off the borrowers' promissory note that was in default, and it held the funds for about fourteen days, it failed to notify anyone in writing of the payment deficiency and return of the funds. Notably, plaintiff's own payoff letter contemplated the borrowers may have owed further monies, stating, "There may be additional fees incurred for which you are responsible that are unknown as of the date of this letter." Yet, plaintiff provided no written notification to the borrowers of the amount of the payoff deficiency and instead returned the received wired funds to Entrust's JP Morgan account.

Relevant to a review of plaintiff's actions was that it undisputedly knew: the borrowers had defaulted on their loan payments on December 1, 2020,

Oyawusi had sold the property, and Entrust's wired funds on behalf of the new purchasers were intended to "payoff" the borrowers' promissory note. The Wells Fargo wire transfer specifically instructed defendant's predecessor servicer "RUSHMORE . . . [TO] PAYOFF LOAN 760******** LAYO OYAWUSIAND [sic] VICTORIA ODUNOWO." Therefore, plaintiff knew the wired funds were intended to satisfy the mortgage debt and cancel the outstanding mortgage. Cf. United Orient Bank v. Lee, 208 N.J. Super. 69, 75 (App. Div. 1986) (requiring a bank to accept a payoff pursuant to the direction "upon receipt of the refinancing proceeds to have satisfied the mortgage indebtedness").

Regardless of whether the payoff amount was deficient $30.53 or $3,312.88, plaintiff's failure to notify the borrowers in writing of the remaining balance owed precluded them from curing the deficiency and preventing plaintiff's foreclosure. Plaintiff waited approximately fourteen days to return the wired funds; thus, plaintiff had ample time to provide the borrowers written notice of the deficiency and the amount necessary to pay the loan in full. Indeed, such notice would have achieved the ultimate objective of the payoff letter—to explain how to complete the payoff and reconcile any amount owed. Plaintiff's actions ultimately resulted in the loss of funds.

16

"[E]quity will generally conform to established rules and precedents[] and will not change or unsettle rights that are created and defined by existing legal principles." W. Pleasant-CPGT, Inc. v. U.S. Home Corp., 243 N.J. 92, 108 (2020) (first alteration in original) (quoting Dunkin' Donuts of Am., Inc. v. Middletown Donut Corp., 100 N.J. 166, 183 (1985)). "This is the basis for the equitable maxim 'equity follows the law,' which instructs that as a rule a court of equity will follow the legislative and common-law regulations of rights, and also obligations of contract." Borough of Seaside Park v. Comm'r of N.J. Dep't of Educ., 432 N.J. Super. 167, 222 (App. Div. 2013) (quoting Dunkin', 100 N.J. at 183). Further, "[i]t is true that '[e]quity does not ordinarily aid one whose indifference was the sole cause of the injury of which he [or she] now complains.'" Goodyear Tire & Rubber Co. v. Kin Props., Inc., 276 N.J. Super. 96, 105 (App. Div. 1994) (second alteration in original) (quoting Moro v. Pulone, 140 N.J. Eq. 25, 30 (Ch. 1947)). After reviewing the undisputed facts, we discern no error in the court's equitable determination that plaintiff's inappropriate actions surrounding the return of the wired funds to Entrust dictates that plaintiff must discharge the borrowers' mortgage. Accordingly, we discern no error in the court's granting of defendant's summary judgment motion.

Having concluded the promissory note required plaintiff to apply defendant's payoff amount to the borrowers' loan and that equity supports discharging the mortgage, we need not address the parties' arguments regarding the application of the Uniform Commercial Code (UCC) Article 4A, N.J.S.A. 12A:4A-101 to -507, and the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 to 1667f.

To the extent that we have not addressed plaintiff's remaining contentions, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-1964-23