**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1055-23

M&T BANK,

      Plaintiff-Respondent,

v.

BRYAN VERA,

      Defendant-Appellant,

and

ELENA VERA and MIDLAND
CREDIT MANAGEMENT, INC.,

      Defendants.

_____

Submitted February 26, 2025 – Decided June 11, 2025

Before Judges Marczyk and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. F-002880-22.

Bryan Vera, appellant pro se.

Brock & Scott, PLLC, attorneys for respondent (Gene R. Mariano, on the brief).

PER CURIAM

In this residential foreclosure action, defendant Bryan Vera appeals from the trial court's August 23, 2023 order entering final judgment of foreclosure in favor of plaintiff M&T Bank.  Finding the court did not abuse its discretion, we affirm.

I.

On December 22, 2017, defendant and his wife, Elena Vera (collectively the Veras),[1] executed a fixed rate promissory note (note) with Omega Financial Services, Inc. (Omega), in the amount of $337,352, payable in monthly installments beginning in February 2018.  To secure payment of the note, the Veras executed a mortgage through Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Omega, encumbering their property in Monroe Township.  On February 20, 2019, MERS, as nominee for Omega, assigned all its rights, title and interest in the mortgage to plaintiff.

In June 2020, the Veras defaulted on the loan after failing to make timely

---

[1] Elena Vera and Midland Credit Management, Inc. (Midland) were defendants to the underlying foreclosure action, but did not join this appeal.  Therefore, reference to "defendant" in this opinion refers only to Bryan Vera.

payments. In February 2022, plaintiff sent the Veras a notice of intent to accelerate and foreclose, requesting they pay the unpaid balance and accumulated fees by March 16, 2022 to cure the default.

After the Veras failed to provide any payment by the deadline, plaintiff filed a foreclosure complaint against the Veras and Midland on March 28, seeking that the court fix the amount due on the mortgage, bar the Veras from any equity of redemption, direct that plaintiff be paid the amount due on the mortgage and any accumulated interest and fees, order the sale of the property to satisfy the mortgage, and grant plaintiff possession of the property.

Defendant filed a timely answer, claiming plaintiff lacked standing to bring the foreclosure action, referencing a "Bailee Notice," which on its face reflected that First Tennessee Bank (First Tennessee) originally loaned funds to Omega from which Omega extended its mortgage loan to defendant, and verified that plaintiff now held the note.[2] Defendant thus contended that neither Omega nor plaintiff "c[ould] claim lender status in the complaint" and, consequently, could not institute the foreclosure action. Defendant sought a case management conference and discovery before the matter proceeded any further, requesting

---

[2] The Bailee Notice indicates First Tennessee and Omega entered a "Mortgage Warehouse Loan and Security Agreement" under which Omega owed repayment of the warehouse loan to First Tennessee.

3

disclosure of the "original wet-ink promissory . . . note" and demanding proof of the Veras' financial obligations to plaintiff.

After the completion of discovery, plaintiff moved for summary judgment in November 2022, relying on the note in plaintiff's possession, the proof of the valid assignment of the mortgage from MERS, as Omega's nominee, to plaintiff, and a sworn certification from plaintiff's representative detailing the payment history and establishing defendant was in default from June 1, 2020. Thereafter, defendant filed a motion on January 26, 2023, seeking summary judgment in his favor and seeking denial of plaintiff's motion, alleging plaintiff failed to establish standing.

On February 17, 2023, the court granted summary judgment in plaintiff's favor. It explained that defendant did not present evidence refuting the validity of the documentation confirming the default, leaving plaintiff's standing to foreclose as the only issue challenged by defendant. The court found the record demonstrated "[p]laintiff clearly ha[d] standing and the right [to] foreclose," finding it showed plaintiff "[wa]s, and ha[d] been, in possession of the [n]ote since prior to the filing of the [c]omplaint." (Emphasis omitted). It recognized plaintiff also "produced a valid [a]ssignment . . . recorded in the Office of the Clerk of Middlesex County[,] . . . which took place before this foreclosure

action commenced," demonstrating the note was lawfully assigned to plaintiff in 2019, and "possess[ed] the actual 'wet[-]ink' note." The court, finding no genuine issue of material fact preventing entry of judgment in favor of plaintiff, ordered a return of jurisdiction to the Office of Foreclosure for an uncontested foreclosure action. For the same reasons, the court denied defendant's motion in its entirety.

In March 2023, plaintiff moved for entry of default against defendant, which the court granted on April 6. After plaintiff notified defendant of its intent to apply for final judgment in foreclosure, plaintiff filed a notice of motion for entry of judgment in June 2023. Plaintiff attached a "Certification of Diligent Inquiry and Accuracy of Foreclosure Documents and Factual Assertions" pursuant to Rule 4:64-2(d), certified by Daniel J. Capecci, Esq., attorney for plaintiff; and "Proof of Amount Due Certification and Schedule," certified by Laurie Hannah, an employee of plaintiff. Defendant filed opposition, asserting in part that plaintiff's certifications could not substitute for affidavits, which the court denied as without merit in light of Rule 1:4-4(b)'s expressly permitting certifications in lieu of affidavits. The court also rejected defendant's remaining arguments, some of which reasserted earlier challenges rejected on summary judgment, finding the claims "inappropriate" at the final judgment stage.

Accordingly, on August 23, 2023, the court entered a final judgment of foreclosure against defendant and in favor of plaintiff in the sum of $400,112.75, constituting principal and accumulated interest, and issued a writ of execution for the mortgaged premises to be sold by sheriff's sale to satisfy the sum owed to plaintiff.

In September 2023, defendant filed a motion to vacate the final judgment under Rule 4:50-1(f). He claimed this motion "[wa]s not an attempt to relitigate . . . [p]laintiff's standing," but instead argued plaintiff's notice of motion for entry of final judgment failed to comply with Rule 4:64-2, as it was supported by certification rather than affidavit, further citing a June 9, 2011 New Jersey Supreme Court order[3] that required "affidavits" to be appended to certain foreclosure applications under Rule 4:64-2.

On October 11, 2023, defendant filed a Notice of Appeal of the August 23 final judgment of foreclosure.

On October 20, the trial court denied defendant's motion to vacate the final judgment, ordering the matter to proceed to sheriff's sale and characterizing the motion as "yet another of a series of duplicative applications that have been

---

[3] See Sup. Ct. of N.J., Notice to the Bar: Residential Mortgage Foreclosure Rules–Amendments to Rules 4:64-1 and 4:64-2; Revised Form Certifications/ Affidavits (June 9, 2011).

A-1055-23

[made] earlier." After "painstakingly recount[ing] the prior history and disposition[s] of [defendant's] applications," the court found defendant did "not have a meritorious defense to vacate the final judgment, nor d[id] [he] qualify for relief under any pertinent subsection of" Rule 4:50-1. The court found defendant's renewed challenges to the certifications "[we]re completely and legally unfounded—as they were previously raised and rejected by the [c]ourt in its" earlier order. The court noted plaintiff's submissions complied with Rule 1:4-4(b), permitting certifications in lieu of affidavits.

II.

On appeal, defendant challenges the final judgment of foreclosure and reprises his argument that plaintiff lacked standing to bring the foreclosure action, claiming that "absent proof of original consideration" for an assignment from First Tennessee to either Omega or plaintiff, Omega's purported assignment was a "nullity," and plaintiff cannot establish standing. He also again asserts that plaintiff's certifications in support of foreclosure failed to comply with both Rule 4:64-2 and the Supreme Court's June 9, 2011 order.

Plaintiff counters that the trial court properly found it clearly established its ownership of the note, and that defendant continues to misunderstand First Tennessee's role as the warehouse lender providing Omega with the funds it then

lent to the Veras pursuant to the note and mortgage.  Plaintiff lastly asserts its certifications in lieu of affidavits under Rule 1:4-4 sufficed to satisfy Rule 4:64-2.  We agree as to both issues.

III.

"[A]n application to open, vacate, or otherwise set aside a foreclosure judgment or proceedings subsequent thereto is subject to an abuse of discretion standard."  United States v. Scurry, 193 N.J. 492, 502 (2008).  Therefore, we accord "substantial deference" to the trial court's decision.  U.S. Bank Nat'l Ass'n v. Curcio, 444 N.J. Super. 94, 105 (App. Div. 2016) (quoting U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012)).  The "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"[T]he only issues in a foreclosure action are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises."  Sun NLF Ltd. P'ship v. Sasso, 313 N.J. Super. 546, 550 (App. Div. 1998); see also Great Falls Bank v. Pardo, 263 N.J. Super. 388, 394 (Ch. Div. 1993).  Here, defendant does not challenge the validity of the note or

8

the mortgage; instead, he contests only plaintiff's standing. We are satisfied the trial court did not misapply its discretion in finding plaintiff had standing to foreclose.

"[P]ossession of the note or an assignment of the mortgage that predated the original complaint confer[s] standing" to bring a foreclosure action. Deutsche Bank Tr. Co. Ams. v. Angeles, 428 N.J. Super. 315, 318 (App. Div. 2012). "[A] party seeking to foreclose a mortgage must own or control the underlying debt." Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 222 (App. Div. 2011) (quoting Wells Fargo Bank, N.A. v. Ford, 418 N.J. Super. 592, 597 (App. Div. 2011)).

Mortgages and the rights of the mortgagee thereunder are assignable by law, conferring onto the assignee the right to sue the original mortgagor. See N.J.S.A. 46:9-9. "A valid assignment must contain evidence of the intent to transfer one's rights, and 'the subject matter of the assignment must be described sufficiently to make it capable of being readily identified.'" K. Woodmere Assocs., L.P. v. Menk Corp., 316 N.J. Super. 306, 314 (App. Div. 1998) (quoting 3 Williston on Contracts § 404 (3d ed. 1957)). By assigning a mortgage, the mortgagee transfers "the totality of . . . [its] rights[;] that is, [its] right to the debt as well as to the lien securing it." Invs. Bank v. Torres, 457 N.J. Super. 53, 60

(App. Div. 2018) (quoting 5 <u>Tiffany on Real Property</u> § 1451 (3d ed. 1939)).

The record demonstrates, as the trial court repeatedly found, plaintiff possessed and produced the note at the time of foreclosure and produced the valid assignment of the mortgage to it. This ends the inquiry.

The corporate assignment of mortgage labeled MERS, Omega's nominee, as the "assignor," and plaintiff as the "assignee," and specifically stated the following:

> [T]he said [a]ssignor . . . assigns unto the above-named [a]ssignee, the said [m]ortgage having an original principal sum of $337,352[] with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said [a]ssignor hereby grants and conveys unto the said [a]ssignee, the [a]ssignor's interest under the [m]ortgage.

This language memorializes Omega's intent to assign the mortgage to plaintiff, <u>see</u> <u>K. Woodmere</u>, 316 N.J. Super. at 314, thereby transferring to plaintiff "the totality" of Omega's rights under the mortgage, <u>Torres</u>, 457 N.J. Super. at 60 (quoting 5 <u>Tiffany on Real Property</u> § 1451). The assignment occurred on February 20, 2019, vesting in plaintiff all rights under the mortgage and note well before plaintiff filed its complaint in March 2022. Consequently, plaintiff had standing to bring the foreclosure action against defendant, <u>see</u> <u>Deutsche Bank Tr. Co. Ams.</u>, 428 N.J. Super. at 318, and the court properly entered

10

judgment in plaintiff's favor.

In his various applications before the trial court and now on appeal, defendant conflates the party providing the funds for the lending transaction with the entity possessing rights under the note and mortgage—including standing to foreclose upon default—critically misconstruing the legal significance of Omega's assignment to plaintiff. For completeness we add the following.

Omega is labeled the "lender" on both the Bailee Notice and the note, evidencing its prior rights as the mortgagee. The Bailee Notice also reveals First Tennessee's role as warehouse lender—not as a party to the mortgage agreement between Omega and defendant. In that capacity, First Tennessee provided only the underlying funding to Omega to then extend its loan to defendant.

Generally, warehouse lending

> describes the process by which a financial institution . . . provides a short-term line of credit to a mortgage loan originator so that the originator can pursue a property buyer's application for a mortgage loan. After the loan closes, it is typically sold to a permanent investor, and the proceeds of that sale are used to repay the warehouse lender.
>
> [Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co., 297 F.R.D. 99, 112 n.10 (S.D.N.Y. 2013).]

Accordingly, defendant owed its early repayment obligation to Omega as its

direct lender, and not to First Tennessee; in turn, Omega owed repayment to First Tennessee. Importantly, the Bailee Notice advises plaintiff of First Tennessee's prior lending agreement with Omega and memorializes that plaintiff held the note. Thus, defendant's argument that plaintiff failed to include First Tennessee as a party to this action or to otherwise recognize it as the true mortgagee is without merit.

We similarly reject defendant's argument that plaintiff failed, under the relevant provisions of Rule 4:64-2, to affix affidavits, as opposed to certifications, to its notice of motion for entry of judgment. The court appropriately accepted, pursuant to Rule 1:4-4(b), plaintiff's certification of amount due under Rule 4:64-2(b) and certification of diligent inquiry under Rule 4:64-2(d).

Rule 1:4-4(b) provides a party may submit a certification "[i]n lieu of . . . affidavit, oath, or verification" if it is also accompanied by the appropriate certifying language expressed in the rule "immediately preced[ing] the affiant's signature." This court has recognized the legitimacy of substitutions pursuant to Rule 1:4-4(b) in other contexts. See Curcio, 444 N.J. Super. at 106 (recognizing the plaintiff's "Certification of Inquiry/ Mailing" "complied with all . . . the requirements set forth in Rule 4:4-7," despite that rule requiring an

12

affidavit); State v. Van Ness, 450 N.J. Super. 470, 493 n.10 (App. Div. 2017) ("Pursuant to Rule 1:4-4(b), a certification" attached to a defendant's 5A form for public defender eligibility "substitutes for an oath."). We see no reason to depart from the well-settled usage of Rule 1:4-4(b) in residential mortgage foreclosure actions to satisfy Rule 4:64-2(b) and (d), especially when, as here, the submissions also substantively comply with that rule. We do not construe the Supreme Court's June 9, 2011 order, and the changes to Rule 4:64-2(b) and (d), to supplant Rule 1:4-4(b)'s discretion to substitute certifications for affidavits.

To the extent we have not addressed any of defendant's remaining arguments, we consider them without sufficient merit to warrant discussion in this opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1055-23